THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAVIER M. BELTRAN, Defendant-Appellant.

Second District   No. 2—00—0846

Opinion filed February 22, 2002.

Daniel M. Kirwan and Edwin J. Anderson, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Meg Gorecki, State's Attorney, of St. Charles (Stephen E. Norris and T. David Purcell, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE CALLUM delivered the opinion of the court:

The State petitioned to adjudicate defendant, Javier M. Beltran, a delinquent minor. Then, pursuant to section 5—805(2) of the Juvenile Court Act of 1987 (the Act) (705 ILCS 405/5—805(2) (West 1998)), the State moved to prosecute defendant under the criminal law. The juvenile court granted that motion, and a jury convicted defendant of three counts of attempted first-degree murder (720 ILCS 5/8—4(a), 9—1(a)(1) (West 1998)) and three counts of aggravated discharge of a firearm (720 ILCS 5/24—1.2(a)(2) (West 1998)). On two of the attempt counts, the trial court sentenced defendant to consecutive prison terms totaling 21 years. On the remaining counts, the court imposed concurrent eight-year sentences. Defendant appeals, arguing that (1) section 5—805(2) of the Act violated his right to due process of law (U.S. Const., amend. XIV); (2) the trial court erred in instructing the jury on accountability; (3) the convictions of aggravated discharge of a firearm violated the one-act, one-crime rule; and (4) the imposition of consecutive sentences violated defendant's due process rights (U.S. Const., amend. XIV; *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000)). We affirm in part and vacate in part.

## I. FACTS

In its petition for adjudication, the State alleged that defendant had committed multiple counts of attempted first-degree murder, a Class X felony (720 ILCS 5/8—4(c)(1) (West 1998)), and aggravated discharge of a firearm. On the date of the alleged offenses, defendant was 15 years old. In its motion to prosecute, the State asserted the existence of probable cause to believe the petition's allegations. See 705 ILCS 405/5—805(2)(a) (West 1998).

At a hearing, the State presented evidence to establish probable cause, and the juvenile court found it sufficient. After the presentation of additional evidence, the court determined that defendant had the burden to rebut the presumption that he should be prosecuted. See 705 ILCS 405/5—805(2)(a) (West 1998). The court considered the statutory factors (705 ILCS 405/5—805(2)(b) (West 1998)) and

concluded that the presumption stood. Accordingly, the court granted the State's motion.

A grand jury indicted defendant. At trial, the State presented the following evidence relevant to our analysis. Eloy Cerenil (Eloy) testified that on April 10, 1999, about 8:15 p.m., he was in his driveway with Rolando Cerenil (Rolando) and Arturo Garcia. Eloy heard gunfire, and a bullet hit him. The bullet penetrated his spine and left him paralyzed from the waist down. He did not see who shot him.

Rolando testified that he heard six or seven shots. Defendant was the shooter, and Adam Luna was with him.

Garcia testified that defendant fired five shots and that Luna was at his side, also holding a gun. A bullet grazed Garcia. Defendant and Luna ran off.

After defendant presented evidence of an alibi, the State proffered a jury instruction on accountability (see Illinois Pattern Jury Instructions, Criminal, No. 5.03 (4th ed. 2000)). Defendant objected, arguing that there had been no "indication of accountability." Nevertheless, relying on *People v. Testa*, 261 Ill. App. 3d 1025 (1994), the trial court found the instruction appropriate because the evidence suggested that two people were "acting together" in the shooting.

In denying his posttrial motion, the court rejected defendant's constitutional attack on section 5—805(2) of the Act. Pursuant to section 5—8—4(a) of the Unified Code of Corrections (the Code) (730 ILCS 5/5—8—4(a) (West 1998)), the court imposed consecutive sentences upon finding that defendant inflicted "severe bodily injury" and committed his offenses "as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective." 730 ILCS 5/5—8—4(a) (West 1998). In denying defendant's motion to reconsider, the court declined to merge the aggravated discharge counts into the attempt counts. Defendant appealed.

## II. SECTION 5—805(2) OF THE ACT

■ Defendant argues that, in two respects, section 5—805(2) violates due process. First, he asserts that the statute runs afoul of *Apprendi*. Although he did not raise that claim in the trial court, a constitutional challenge may be raised at any time. *People v. Vilces*, 321 Ill. App. 3d 937, 943 (2001). Second, he contends that the statute shifts to the minor an impermissible burden. The trial court rejected that claim, but our review is *de novo*. See *People v. Carney*, 196 Ill. 2d 518, 526 (2001).

### A. The Statute

■ In general, when the State petitions for an adjudication of de-

linquency, the minor is subject only to the sanctions available under the Act. See 705 ILCS 405/5—120 (West 1998). The most serious of those sanctions is the minor's commitment to the juvenile division of the Department of Corrections until his twenty-first birthday. See 705 ILCS 405/5—750 (West 1998). However, in some circumstances, the State may move the juvenile court to transfer the case to the criminal court, allowing the State to pursue the sanctions available under the criminal law. Depending on the facts, a transfer may be mandatory (705 ILCS 405/5—805(1) (West 1998)), presumptive (705 ILCS 405/5—805(2) (West 1998)), or discretionary (705 ILCS 405/5—805(3) (West 1998)). Here, the State obtained a presumptive transfer under section 5—805(2).

■ To seek a presumptive transfer, the State must allege that (1) the minor committed, *e.g.*, a Class X felony (other than armed violence) or aggravated discharge of a firearm; and (2) the minor was at least 15 years old. 705 ILCS 405/5—805(2)(a) (West 1998). If the juvenile court finds "probable cause to believe that the allegations *** are true," there arises a "rebuttable presumption" that the case should be transferred. 705 ILCS 405/5—805(2)(a) (West 1998). The court then "shall enter an order permitting prosecution under the criminal laws" unless, after considering several enumerated factors, the court finds "clear and convincing evidence that the minor would be amenable to the care, treatment, and training programs available through the facilities of the juvenile court." 705 ILCS 405/5—805(2)(b) (West 1998).

## B. *Apprendi*

In this now-famous case, the defendant pleaded guilty to a second-degree offense. Ordinarily, such an offense was punishable by 5 to 10 years' imprisonment. However, under New Jersey's "hate crime" law, the trial court could impose a sentence of up to 20 years if it found, by a preponderance of the evidence, that the defendant's purpose had been to intimidate the victim because of, *e.g.*, the victim's race. In *Apprendi*, the trial court made such a finding and sentenced the defendant to 12 years' imprisonment.

The Supreme Court determined that, in essence, the "hate crime" law allowed the trial court to find, by a preponderance of the evidence, an element of the defendant's crime. Such a procedure violated the defendant's due process right to " 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.' " See *Apprendi*, 530 U.S. at 477, 147 L. Ed. 2d at 447, 120 S. Ct. at 2356, quoting *United States v. Gaudin*, 515 U.S. 506, 510, 132 L. Ed. 2d 444, 449, 115 S. Ct. 2310, 2313 (1995). Thus, the Court held that, "[o]ther than the fact of a prior conviction, any fact

that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.

Here, defendant submits the following. When the State petitioned to adjudicate him delinquent, he faced a sanction no greater than commitment until his twenty-first birthday. However, after the juvenile court found (1) probable cause to believe the State's allegations and (2) a lack of clear and convincing evidence of defendant's amenability to the juvenile court's facilities, defendant faced (and ultimately received) a much greater sanction. Thus, in violation of *Apprendi*, the maximum penalty was increased upon facts that were not submitted to a jury and proved beyond a reasonable doubt.

Superficially, defendant appears to proffer a valid application of *Apprendi*. Nevertheless, his argument fails because he attempts to divorce the case's holding from its legal basis. New Jersey's "hate crime" law violated due process because, as the accused in a criminal prosecution, the defendant had the right to have a jury determine, beyond a reasonable doubt, the facts that established the maximum penalty. A hearing under section 5—805(2), however, is a juvenile proceeding. Thus, whether defendant was denied due process depends on the standards applicable to those proceedings, rather than those applicable to criminal prosecutions. See *People v. Taylor*, 76 Ill. 2d 289, 301-02 (1979).

■ It is well established that, in a juvenile proceeding, due process does not require a jury. See *McKeiver v. Pennsylvania*, 403 U.S. 528, 545-46, 29 L. Ed. 2d 647, 661, 91 S. Ct. 1976, 1986 (1971); *People ex rel. Carey v. Chrastka*, 83 Ill. 2d 67, 74 (1980). As for the standard of proof, due process requires proof beyond a reasonable doubt during the adjudicatory stage of a juvenile proceeding (*In re Winship*, 397 U.S. 358, 367-68, 25 L. Ed. 2d 368, 377, 90 S. Ct. 1068, 1074-75 (1970)), *i.e.*, the stage at which " 'a determination is made as to whether a juvenile is a "delinquent" as a result of alleged misconduct on his part, with the consequence that he may be committed to a state institution' " (*Winship*, 397 U.S. at 358-59, 25 L. Ed. 2d at 372, 90 S. Ct. at 1069-70, quoting *In re Application of Gault*, 387 U.S. 1, 13, 18 L. Ed. 2d 527, 538, 87 S. Ct. 1428, 1436 (1967)). However, that standard does not apply to the dispositional stage of a juvenile proceeding. See *Winship*, 397 U.S. at 359 n.1, 25 L. Ed. 2d at 372 n.1, 90 S. Ct. at 1070 n.1.

■ A hearing under section 5—805(2) is dispositional, not adjudicatory. That is, the hearing determines not the minor's guilt but the forum in which his guilt may be adjudicated. *Taylor*, 76 Ill. 2d at 302. Thus, although the juvenile court made findings that exposed him to a

greater sanction, defendant had no due process right to have a jury make those findings beyond a reasonable doubt. Because *Apprendi* bears only on the process due in criminal proceedings, the case is simply inapplicable here.

## C. Burdens

Defendant asserts that, once the juvenile court finds probable cause to believe the State's allegations, section 5—805(2) invokes a mandatory rebuttable presumption that shifts to the minor the burden of proof. On this basis, too, defendant contends that the statute violates due process.

■ We first note that section 5—805(2) does not expressly place a burden on the minor. However, it expressly invokes a "rebuttable presumption" (705 ILCS 405/5—805(2)(a) (West 1998)), and a rebuttable presumption necessarily shifts the burden of proof (see *Heiner v. Donnan*, 285 U.S. 312, 329, 76 L. Ed. 772, 780, 52 S. Ct. 358, 362 (1932)). Thus, once the presumption arose, the juvenile court correctly inferred that defendant had the statutory burden to rebut it.

■ We further note that defendant correctly labels this a mandatory presumption, rather than a permissive one. A permissive presumption allows but does not require the fact finder to infer the presumed fact. A mandatory presumption, on the other hand, is one that the fact finder may not reject. *People v. Watts*, 181 Ill. 2d 133, 142 (1998). Section 5—805(2) states that, unless the presumption is rebutted, the juvenile court "*shall* enter an order permitting prosecution under the criminal laws." (Emphasis added.) 705 ILCS 405/5—805(2)(b) (West 1998). In other words, unless the presumption is rebutted, the court *must* accept the presumed fact that a transfer is warranted. Thus, the presumption is mandatory. See *People v. O'Brien*, 197 Ill. 2d 88, 93 (2001) ("shall" is "a clear expression of legislative intent to impose a mandatory obligation").

■ A mandatory rebuttable presumption violates due process when it relieves the State of its burden to prove the elements of a crime. *Watts*, 181 Ill. 2d at 144-47. However, in considering statutes similar to section 5—805(2), courts across the country have unanimously upheld such presumptions. For example, in *In re Welfare of L.J.S.*, 539 N.W.2d 408 (Minn. App. 1995), the Minnesota Court of Appeals addressed a virtually identical statute. The court noted that the presumption at issue does not shift the burden of proof on the elements of an offense. Instead, the presumption "merely determines which court will try the case and *evaluate* the elements of the offense." (Emphasis added.) *L.J.S.*, 539 N.W.2d at 413; see also *State v. Coleman*, 271 Kan. 733, 738, 26 P.3d 613, 618 (2001) ("'The presumption does not

improperly shift the burden of proof to the defendant on any elements of the offenses"); *Commonwealth v. Cotto*, 708 A.2d 806, 814 (Pa. Super. 1998) (because transfer hearing determines only "the appropriate forum for the adjudicatory proceeding," burden on minor "does not violate the maxim that the Commonwealth is charged with proving each element of an offense").

As we noted in the preceding section, our own supreme court has recognized that a transfer hearing resolves only whether the adjudicatory proceeding will occur in the juvenile forum. *Taylor*, 76 Ill. 2d at 302. The court has further noted that a minor has no constitutional right to be adjudicated in that forum. *People v. J.S.*, 103 Ill. 2d 395, 402 (1984). Indeed, the legislature chose to create the juvenile court (*J.S.*, 103 Ill. 2d at 402), and the legislature could choose to abolish it. See *Coleman*, 271 Kan. App. 2d at 736, 26 P.3d at 616 ("The special treatment of juvenile offenders *** results from statutory authority, which can be withdrawn"). Thus, the legislature was free to impose on the minor the burden to prove that he belongs in that forum. Regardless of whether he meets that burden, the State retains the ultimate burden to prove the elements of the crime, and the minor is afforded due process of law.

## III. ACCOUNTABILITY

Next, defendant argues that the State failed to submit sufficient evidence to justify instructing the jury on accountability. He asserts that the evidence showed that he was guilty as a principal or not guilty at all. We disagree.

■ A defendant is legally accountable for another's conduct when, before or during the commission of a crime, and with the intent to promote or facilitate the commission of that crime, he solicits, aids, abets, agrees, or attempts to aid the other in the planning or commission of the crime. 720 ILCS 5/5—2(c) (West 1998); *Testa*, 261 Ill. App. 3d at 1030. An instruction on the issue is justified if the State submits even the "slightest" evidence to support a theory of accountability. *Testa*, 261 Ill. App. 3d at 1030. Such evidence, along with evidence that the defendant acted as a principal, is sufficient to support an instruction on each theory, even if the State advanced only one in its case in chief. *Testa*, 261 Ill. App. 3d at 1030. We may reverse a trial court's decision to issue a jury instruction only if the court abused its discretion. *People v. Kidd*, 295 Ill. App. 3d 160, 167 (1998).

Defendant notes that only two witnesses identified a specific shooter and that both identified defendant. No one testified that shots were fired by anyone else for whom defendant could have been accountable. Thus, defendant concludes, no evidence justified an instruction on accountability.

■ We acknowledge the absence of any *direct* evidence that anyone but defendant fired shots. However, evidence of accountability may be circumstantial. *People v. Cooks*, 253 Ill. App. 3d 184, 188 (1993). Garcia testified that, as defendant fired his shots, Luna was at his side, holding a gun. Furthermore, Garcia stated that defendant fired five shots, but Rolando testified that he heard six or seven. Thus, although no one saw Luna fire his gun, the jury could have inferred that he did so. The jury then could have determined that, to the extent that Luna was guilty as a principal, defendant was guilty as an accessory.

Defendant relies on *People v. Williams*, 161 Ill. 2d 1 (1994), *People v. Crowder*, 239 Ill. App. 3d 1027 (1993), and *People v. Lusietto*, 41 Ill. App. 3d 205 (1976). However, in each case, the State presented no evidence to even suggest that the defendant could have been guilty as an accessory rather than a principal. See *Williams*, 161 Ill. 2d at 51; *Crowder*, 239 Ill. App. 3d at 1030; *Lusietto*, 41 Ill. App. 3d at 207-08. As we explained, that is not the case here. The trial court did not err in instructing the jury on accountability.

## IV. ONE ACT, ONE CRIME

■ Defendant asserts that his convictions of aggravated discharge of a firearm arose from the same physical act as his convictions of attempted first-degree murder. Thus, he concludes, the aggravated discharge convictions must be vacated under the one-act, one-crime rule. See *People v. King*, 66 Ill. 2d 551, 566 (1977). The State agrees, and so do we.

In *People v. Crespo*, No. 86556 (February 16, 2001), the defendant stabbed the victim three times in rapid succession. The defendant was charged with, and convicted of, armed violence and aggravated battery. The supreme court held that, although the multiple stabbings could have supported the separate convictions, the State did not apportion the crimes among the various wounds, either in the indictment or at trial. Because the State portrayed the defendant's conduct as a single attack, multiple convictions were untenable.

*Crespo* controls. Here, defendant and Luna fired a series of shots at three victims. Against each victim, defendant was charged with, and convicted of, a count of attempt and a count of aggravated discharge. However, as to each victim, the indictment did not specify which shots supported which charge. Similarly, at trial, the State did not distinguish among the shots. Thus, against each victim, defendant committed a single act that supported only a single conviction. Because aggravated discharge of a firearm is less serious than attempted first-degree murder, we vacate the aggravated discharge convictions. See *People v. Amaya*, 321 Ill. App. 3d 923, 931 (2001).

## V. CONSECUTIVE SENTENCES

■ Finally, defendant attacks section 5—8—4(a) of the Code, the basis for his consecutive sentences. He notes that, to invoke section 5—8—4(a), the trial court found that he inflicted "severe bodily injury" and committed his crimes "as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective." 730 ILCS 5/5—8—4(a) (West 1998). He concludes that, under *Apprendi*, due process required those facts to be submitted to a jury and proved beyond a reasonable doubt.

In *Carney*, 196 Ill. 2d at 531-32, the supreme court foreclosed defendant's argument:

> "While, undeniably, a defendant who receives consecutive sentences will serve a longer period of imprisonment than a defendant who receives identical concurrent sentences, this fact alone does not make *Apprendi* applicable. The application by a judge of the factors identified in section 5—8—4(a) of the Code determines only the manner in which a defendant will serve his sentences for multiple offenses. The defendant is not exposed to punishment beyond that authorized by the jury's verdict, provided that the sentence for each separate offense does not exceed the maximum permitted by statute for that offense."

The court concluded "that consecutive sentences imposed under section 5—8—4(a) of the Code do not violate the due process rights of defendants and that the Supreme Court's *Apprendi* decision does not apply to such sentences." *Carney*, 196 Ill. 2d at 536.

In accordance with *Carney*, we reject defendant's argument.

## VI. CONCLUSION

For these reasons, we vacate defendant's convictions of aggravated discharge of a firearm. In all other respects, the judgment of the circuit court of Kane County is affirmed.

Affirmed in part and vacated in part.

GEIGER and BYRNE, JJ., concur.