No. 2--01--0526

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT 

______________________________________________________________________________

In re
 MATTHEW M., a Minor ) Appeal from the Circuit

) Court of Du Page County

             )

) No. 99--JD--900

)

)

(The People of the State ) Honorable

of Illinois, Petitioner-Appellee, ) Elizabeth W. Sexton,

v. Matthew M., Respondent-Appellant). ) Judge, Presiding.

______________________________________________________________________________

PRESIDING JUSTICE HUTCHINSON delivered the opinion of the court:

The State petitioned to adjudicate respondent, Matthew M., a delinquent minor.  Then, pursuant to section 5--810 of the Juvenile Court Act of 1987 (the Act) (705 ILCS 405/5--810 (West 2000)), the State moved to designate the proceeding as an extended jurisdiction juvenile (EJJ) prosecution.  The trial court granted the motion, and a jury subsequently convicted respondent of residential burglary (720 ILCS 5/19--3 (West 1998)).  The trial court sentenced respondent to a term of probation until he attained the age of 21.  Pursuant to section 5--810 of the Act, the trial court also sentenced respondent to a four-year adult sentence of imprisonment, staying the sentence on the condition that the respondent did not violate the conditions of his juvenile probation.  On appeal, respondent contends that (1) the State failed to prove him guilty beyond a reasonable doubt; (2) the trial court abused its discretion in not instructing the jury on the lesser-included offense of criminal trespass to a residence; (3) section 5--810 of the Act violates his due process rights (U.S. Const., amend. XIV; 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000)); and (4) his conditional adult sentence must be vacated because his minor status disqualifies him for possible treatment under the treatment alternatives for criminal justice clients (TASC) program pursuant to section 40--5 of the Alcoholism and Other Drug Abuse and Dependency Act (20 ILCS 301/40--5 (West 2000)). We reverse and remand for further proceedings.

On August 16, 1999, the State petitioned the trial court to adjudicate the respondent a delinquent minor.  The petition alleged that on August 12, 1999, the respondent committed the offense of residential burglary (720 ILCS 5/19--3 (West 1998)).  Specifically, the petition alleged that respondent entered into the residence of the victim, Mary Walker, with the intent to commit a theft.  At the time the State filed this petition, respondent was 16 years old.

On August 30, 1999, the State moved to designate the proceeding as an EJJ prosecution.  See 705 ILCS 405/5--810 (West 2000).  The State alleged that respondent was more than 13 years old at the time he committed the offense; the charged offense of residential burglary would be a felony if committed by an adult; and probable cause existed to believe that respondent committed the offense alleged in the petition.  Following a hearing, the trial court found that probable cause existed to believe that the allegations in the State's delinquency petition and motion were true, thereby raising a rebuttable presumption that the proceeding should be designated as an EJJ prosecution.  The trial court further found that the presumption had not been rebutted by clear and convincing evidence and ordered that the proceeding be designated an EJJ prosecution.

At trial, the victim testified that during the morning of August 12, 1999, she was in her townhouse on Winchester Street in Warrenville.  The victim testified that she had taken the day off of work to register her children for school.  At approximately 10:30 a.m., respondent came to the victim's front door.  The victim testified that she did not know respondent but recognized him as "a kid" she had seen in the neighborhood.  The victim testified that respondent was not her son's friend and that respondent "jumped back" and looked "stunned" when she answered the door.  Respondent asked if the victim's son was home.  The victim responded that her son was in the shower.  Respondent then asked the victim to tell her son that "Matt stopped by."  As the victim left her townhouse that morning, she observed respondent standing with "a group of kids" in her neighbor's yard.  The victim testified that, as she walked toward her car, another individual in the group asked her where her daughter was.  The victim responded that her daughter was not at home.

When the victim returned to her residence later that afternoon, she found a trail of muddy footprints in her master bedroom.  These footprints had not been in her bedroom when she left that morning.  The victim immediately called the police.  After the police arrived, the victim discovered that two men's rings, a man's watch, and $440 were missing from the armoire in the master bedroom.  The victim testified that a window screen in her son's bedroom had been torn.

Officer Mark Gross responded to the victim's report.  Officer Gross interviewed the victim and received a description of respondent.  Officer Gross testified that the residence was "disheveled" and "in disarray."

Officer Brian Melvin testified that he was on duty on August 12, 1999.  At approximately 9 p.m., while on patrol, he observed a vehicle swerving on the road.  Officer Melvin effectuated a traffic stop and called for assistance.  Officer Melvin testified that Natalie Stokes was sitting in driver's seat; Sam Smith was sitting in the front passenger seat; and respondent and Dandrian Jones were sitting in the backseat.  Officer Melvin testified that he did not see respondent making any "furtive moves" as he looked into the car.  After obtaining permission to search the car, Officer Melvin found a watch under Smith's seat.  This watch matched the description of the watch that the victim reported missing.  Officer Melvin then patted down respondent, Smith, and Jones.  Officer Melvin recovered $186 from Smith and $200 from Jones.  Officer Melvin did not find any cash in respondent's possession.  The police transported respondent, Smith, and Jones to the Warrenville police station.  At the station, Officer Melvin advised respondent of his rights and informed the juvenile officer that respondent was in custody.

Detective Tony Dutkovich of the Warrenville police department testified that he questioned respondent shortly after 1 a.m. on August 13, 1999.  At the beginning of the interview, respondent confirmed that he had been advised of his 
Miranda
 rights and agreed to speak to Detective Dutkovich.  Respondent initially denied that he was involved in a burglary at the victim's residence.  Upon further questioning, respondent admitted that he had been at the scene of the burglary earlier in the day with another person.  After Detective Dutkovich advised respondent that Smith was cooperating with the police, respondent said, "I went into the residence."  Respondent then stated, "I didn't go into a residence in Winchester.  I didn't do anything wrong."  When Detective Dutkovich asked respondent why he had said that he went into the residence, respondent replied "I don't know what you are talking about.  I didn't do anything."

At the conclusion of this interview, Officer Patrick Treacy of the Warrenville police department presented respondent with the written statement that Smith had given to the police.  After reviewing the statement, respondent told Treacy that Smith's statement had "reversed some roles."  Respondent explained that Smith went into the residence "doing the burglary" while respondent stood outside and acted as a lookout.  Respondent then provided the following written statement:

"Me and [Smith] went to Winchester in the morning looking for my bike.  We walk [
sic
] around Winchester for about 20 minute[s] and [Smith] was like is that little Mike and his Mom leaving.  When we saw them pull off in the car Sam said he was going to go see was the window open[.]  I was like ok I'll be waiting for you out here.  I guess you can say I was just like a little look out [
sic
].  When [Smith] came out the house he had a gold plated watch and silver ring and some money[.]"

After respondent completed his written statement, Treacy asked him if he could help the police locate the missing rings.  Respondent said he did not know where the rings were.  Treacy then placed respondent and Smith together in a room and provided them with a map of the victim's subdivision.  Treacy asked respondent and Smith to place an "X" on the map where the police could find the rings.  Treacy told them that no one would be watching and that no one would know who marked an "X" on the map.  Both respondent and Smith agreed to this suggestion.  Treacy then left the room for several minutes.  When he returned, the map contained two "X's."  Treacy did not know who placed the marks on the map.  The police later found the two missing rings in the locations indicated on the map.

During the instructions conference, respondent requested the trial court to instruct the jury on the lesser-included offense of criminal trespass to a residence.  Respondent argued that a reasonable jury could find that he did not have the intent to commit a theft in the victim's residence.  The trial court denied the request, finding that the evidence was insufficient to support the giving of the instruction.  Instead, the trial court instructed the jury solely on the offense of residential burglary.  The trial court also instructed the jury on the theory of accountability.

Following deliberations, the jury found respondent guilty of residential burglary.  Prior to sentencing, respondent petitioned the trial court to be evaluated for possible treatment under TASC.  The State did not object to the request, and the trial court ordered the evaluation.  However, TASC administrators refused to perform an evaluation of respondent because he was a minor.  The trial court subsequently sentenced respondent to a term of probation until his twenty-first birthday.  Pursuant to section 5--810 of the Act, the trial court also sentenced respondent to a four-year adult sentence of imprisonment, staying the sentence on the condition that the respondent did not violate the conditions of his juvenile probation.  After the trial court denied his motion to reconsider sentence, defendant timely filed this appeal.

Respondent's first contention is that the State failed to prove him guilty beyond a reasonable doubt of the offense of residential burglary.  Respondent contends that the State failed to prove that he intended to commit a theft, either as a principal or as an accomplice.  Respondent argues that, although the State was able to place him near the scene of the crime, it could not link him to the items of property stolen from the victim's residence.  Respondent also argues that the State failed to prove that he intended to aid or abet his companions in the commission of the offense.

We note at the outset that it is not the function of this court to retry the defendant.  
People v. Collins
, 106 Ill. 2d 237, 261 (1985).  The relevant question is " 'whether, after viewing the evidence in the light most favorable to the prosecution, 
any
 rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "  (Emphasis in original.)  
Collins
, 106 Ill. 2d at 261, quoting 
Jackson v. Virginia
, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979).  This standard applies to appeals of all criminal convictions, whether the nature of the evidence presented is circumstantial or direct. 
 
People v. Cooper
, 194 Ill. 2d 419, 431 (2000).  The State is not required to exclude every reasonable hypothesis of innocence (
People v. Pintos
, 133 Ill. 2d 286, 291 (1989)), and the jury need not be satisfied beyond a reasonable doubt of each link in the chain of circumstances (
People v. McDonald
, 168 Ill. 2d 420, 444 (1995)).  Proof of guilt beyond a reasonable doubt does not require proof beyond any possibility of a doubt.  
People v. Rush
, 294 Ill. App. 3d 334, 337 (1998).  Moreover, when the determination of a defendant's guilt or innocence depends upon the credibility of the witnesses and the weight to be given their testimony, it is the function of the trier of fact to resolve any conflicts in the evidence.  
Rush
, 294 Ill. App. 3d at 337, citing 
People v. White
, 209 Ill. App. 3d 844, 868 (1991).  We, as a reviewing court, are not to substitute our own judgment for that of the jury.  
Cooper
, 194 Ill. 2d at 431; 
Rush
, 294 Ill. App. 3d at 337.

Section 19--3(a) of the Criminal Code of 1961 (720 ILCS 5/19--3(a) (West 1998)) provides that "[a] person commits residential burglary [when that person] knowingly and without authority enters the dwelling place of another with the intent to commit therein a felony or theft."  To obtain a conviction for residential burglary, the State must prove that the offender's entry into a dwelling was both without authority and with the intent to commit a felony or a theft.  
People v. Wilson
, 155 Ill. 2d 374, 376 (1993).  A jury may infer the offender's intent to commit a residential burglary from proof that the offender unlawfully entered  a building containing personal property that could be the subject of a larceny.  
People v. Ranstrom
, 304 Ill. App. 3d 664, 678 (1999).  Other relevant circumstances include the time, place, and manner that the offender entered the premises, the offender's activity within the premises, and any lack of an alternative explanation for the offender's presence.  
Ranstrom
, 304 Ill. App. 3d at 678.

Additionally, to convict respondent on a theory of accountability, the State was required to prove that (1) respondent solicited, ordered, abetted, agreed, or attempted to aid another in the planning or commission of the crime; (2) respondent's participation took place before or during the commission of the crime; and (3) respondent had the concurrent intent to promote or facilitate the commission of the crime.  See 720 ILCS 5/5--2(c) (West 1998); see also 
People v. Taylor
, 186 Ill. 2d 439, 445 (1999).  Therefore, to prove respondent guilty of residential burglary on an accountability basis, the State was required to show that respondent had, with the requisite intent, aided or abetted Smith prior to or during the commission of the crime.

We believe that the evidence, when viewed in the light most favorable to the State, was sufficient to prove respondent's guilt beyond a reasonable doubt on an accountability theory.  Respondent went to the victim's home the morning of the burglary and "jumped back" and looked "stunned" when the victim opened the door.  When the victim left her residence later that morning, she observed respondent standing in a neighbor's yard with several individuals.  One of these individuals inquired whether the victim's daughter remained at home.  Later that day, respondent was found in a vehicle containing the watch that had been taken from the victim's bedroom.  At the police station, respondent initially admitted that he had entered the victim's residence; he then retracted that admission and denied that he had done anything wrong.  When confronted with Smith's statement, respondent said that Smith went inside the house "doing the burglary" while he stood outside and acted as a lookout.  In his written statement, defendant reiterated that he had acted as a lookout.

From such evidence, we believe that the jury could have found beyond a reasonable doubt that respondent intended to commit a theft in the victim's residence.  Respondent was at the scene of the burglary shortly before it occurred; he tried to learn from the victim whether anyone else was home; he was later found in a vehicle that contained proceeds from the burglary; and he admitted  that he had acted as a lookout while Smith entered the residence to commit the burglary.  Although the police did not find any of the proceeds from the burglary in respondent's direct possession, the jury reasonably could conclude that his presence at the scene and his statements to the police indicated that he intended to assist and participate with Smith in the commission of the offense.

In support of his argument, respondent relies on 
People v. Perez
, 189 Ill. 2d 254 (2000), which stands for the proposition that a defendant's mere presence at the scene of the offense is inadequate to prove guilt.  In 
Perez
, the Illinois Supreme Court  explained that presence at the commission of a crime, even when joined with flight from the crime or the knowledge of its commission, is not sufficient to establish accountability.  
Perez
, 189 Ill. 2d at 268.  The 
Perez
 court explained that, in order for guilt to attach, the accomplice must intend to aid in the commission of the crime.  
Perez
, 189 Ill. 2d at 268.

In this case, the State introduced sufficient evidence to satisfy the standard articulated in 
Perez
.  As noted above, the evidence showed that respondent's involvement exceeded mere presence during the commission of the offense and knowledge that an offense had been committed.  Respondent's own statements demonstrated that he intended to actively participate and aid in the commission of the offense.  We therefore conclude that the State proved respondent guilty of the offense of residential burglary beyond a reasonable doubt.

Respondent next contends that the trial court abused its discretion when it denied his request to instruct the jury on the lesser-included offense of criminal trespass to a residence.  Respondent argues that, in his written statement to the police, he indicated that he acted as lookout for Smith only to see if "the window was open."  Respondent argues that his statement did not indicate that he was aware that Smith intended to commit a burglary.  As such, respondent argues that, had the jury been instructed on the lesser offense, it might have concluded that he intended only to assist Smith in committing a trespass upon the victim's residence.

An instruction on a lesser offense is justified where there is some evidence to support the giving of the instruction.  
People v. DiVincenzo
, 183 Ill. 2d 239, 249 (1998).  A defendant is entitled to an instruction on his theory of the case if there is some foundation for the instruction in the evidence.  
People v. Jones
, 175 Ill. 2d 126, 131-32 (1997).  Very slight evidence supporting a defendant's theory of the case will justify the giving of an instruction.  
Jones
, 175 Ill. 2d at 132.  The trial court abuses its discretion when it refuses to give an instruction that supported by the evidence introduced at trial.  
DiVincenzo
, 183 Ill. 2d at 249.

Here, respondent argues that he did not intend to assist Smith's burglary of the victim's residence.  Rather, respondent asserts that he intended only to act as a lookout so that Smith could determine whether the window to the victim's residence was open.  We agree with respondent that there was some foundation for this theory in the evidence.  In his written statement, respondent wrote that Smith told him that he "was going to go see [if] the window was open" and that respondent would wait for him outside while he checked.  Additionally, the State failed to introduce any direct evidence that respondent and Smith discussed or planned to commit a theft of the victim's residence.  Moreover, the police did not find any of the stolen items in respondent's immediate possession after the crime.  Also, the police did not witness whether respondent or Smith placed the "X's" on the map to indicate the location of the rings.  Based on this evidence, it is possible that a jury could have concluded that respondent did not know that Smith intended to commit a theft when Smith went to check to see whether the victim's window was open.  

One commits the offense of criminal trespass to a residence by entering or remaining within any residence without authority.  720 ILCS 5/19--4(a) (West 1998).  The State does not dispute that criminal trespass to a residence is a lesser-included offense of residential burglary.  For the reasons detailed above, we conclude that the evidence would have supported a conviction of criminal trespass in the event that the jury was not convinced beyond a reasonable doubt that the minor did not share Smith's intent to burglarize the victim's residence.  Accordingly, we hold that the trial court committed reversible error when it refused to instruct the jury on the lesser offense of criminal trespass to a residence.  See 
DiVincenzo
, 183 Ill. 2d at 252.

In so holding, we distinguish the State's authorities.  See 
People v. Cole
, 256 Ill. App. 3d 1 (1993); 
People v. Moore
, 206 Ill. App. 3d 769 (1990).  In both of these cases, the reviewing courts held that instructions on the lesser charge of criminal trespass were not required.  In 
Cole
, the defendant broke into a vehicle and stripped the steering wheel.  The reviewing court held that an instruction on the lesser charge was inappropriate because the defendant's intent to steal the
 vehicle was evident from his act of stripping the steering wheel.  
Cole
, 256 Ill. App. 3d at 4.  In 
Moore
, the police observed the defendants carrying the proceeds of the burglary as they walked out of the residence.  
Moore
, 206 Ill. App. 3d at 775.  Unlike the circumstances of 
Cole
 and 
Moore
, the State in this case failed to present direct evidence demonstrating respondent's intent to commit a theft of the victim's residence.  We therefore conclude that the trial court abused its discretion in refusing the instruction, and we reverse respondent's conviction and remand the case for a new trial.  See 
DiVincenzo
, 183 Ill. 2d at 252.

Respondent's next contention on appeal is that section 5--810 of the Act violates his due process rights (U.S. Const., amend. XIV; 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000)).  Specifically, respondent argues that section 5--810 violates 
Apprendi
 because it permits the trial court to increase the maximum sanction that may be imposed based upon the presence of certain factors that were not submitted to a jury and proved beyond a reasonable doubt.

Some preliminary explanation of section 5--810 of the Act is necessary to understand respondent's argument.  In general, when the State petitions the court for an adjudication of delinquency, the minor is subject only to the sanctions prescribed under the Act.  See 705 ILCS 405/5--120 (West 2000).  The most serious of these sanctions is the minor's commitment to the juvenile division of the Department of Corrections until the minor's twenty-first birthday.  See 705 ILCS 405/5--750 (West 2000).  However, in some circumstances, the State may move the trial court to designate the proceeding as an EJJ prosecution.  If the trial court agrees to designate the proceeding as an EJJ prosecution, then the court, upon finding the minor guilty, must impose one or more of the penalties provided for in section 5--710 of the Act 
and
 a conditional adult criminal sentence.  See 705 ILCS 405/5--810(4) (West 2000).  In the event that the minor violates the conditions of his or her juvenile sentence or commits a new offense, the trial court must order the execution of the conditional adult criminal sentence.  See 705 ILCS 405/5--810(6) (West 1998).

To seek the designation of the proceeding as an EJJ prosecution, the State must allege that (1) a minor 13 years of age or older committed an offense that would be a felony if committed by an adult and (2) there is probable cause to believe that the allegations in the delinquency petition and motion are true.  705 ILCS 405/5--810(1)  (West 2000).  If the trial court finds that there is probable cause to believe the allegations are true, then the court must designate the proceeding as an EJJ prosecution unless the court finds, based on clear and convincing evidence, that adult sentencing would not be appropriate for the minor based on the following factors:  (1) the seriousness of the alleged offense; (2) the minor's history of delinquency; (3) the minor's age; (4) the minor's culpability in committing the alleged offense; (5) whether the offense was committed in an aggressive or premeditated manner; and (6) whether the minor used or possessed a deadly weapon when committing the alleged offense.  705 ILCS 405/5--810(1)(b) (West 2000).

In 
Apprendi
, the United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  
Apprendi
, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.  Here, the respondent asserts that, when the State petitioned to adjudicate him a delinquent minor, he faced a sanction no greater than commitment until his twenty-first birthday.  However, after the trial court found (1) probable cause to believe the State's allegations and (2) a lack of clear and convincing evidence that adult sentencing would be inappropriate for respondent after a consideration of the factors described above, respondent potentially faced a greater sanction by the imposition of a conditional adult sentence.  Respondent argues that the potential maximum sanction that the trial court could impose upon him was increased based upon these factors that were not submitted to a jury and proved beyond a reasonable doubt.

The State initially responds that this contention is not ripe for consideration because any adult sentence imposed on remand will be stayed on the condition that respondent does not violate the provisions of his juvenile sentence.  Therefore, respondent will not be required to serve an adult sentence until such time that the trial court finds that he violated the conditions of his juvenile sentence.  The State argues that respondent's constitutional argument arises only in the event that he actually is required to serve his adult sentence.  Because this event has not yet occurred, the State concludes that the issue is not ripe for resolution.  We disagree.

A controversy is ripe when it has reached the point where the facts permit an intelligent and useful decision to be made.  
People v. P.H.
, 145 Ill. 2d 209, 219 (1991).  For example, in 
P.H.
, the State sought to have a minor transferred from the juvenile system to criminal court pursuant to the "gang-transfer" provisions of the Act.  
P.H.
, 145 Ill. 2d at 217.  The minor argued that the transfer provision violated the constitutional requirements of due process, equal protection, protection from double jeopardy, and the separation of powers.  
P.H.
, 145 Ill. 2d at 218.  After the circuit court held that the transfer provision was an unconstitutional violation of the separation of powers clause, the State appealed.  On appeal, the minor raised all of the same constitutional issues that he had raised before the trial court.  The State asserted that some of these challenges were not ripe for review because the minor had not yet been transferred, tried, and sentenced in adult court.  
P.H.
, 145 Ill. 2d at 219.  Our supreme court held that the issue were nonetheless ripe for determination, explaining that the minor had been arrested and charged with an offense, the facts of the case had been presented to the court, and there was "no need to speculate as to the harm the [minor] would suffer if convicted."  
P.H.
, 145 Ill. 2d at 219.

We believe that a similar conclusion is appropriate in this case.  Although respondent has not yet had to serve an adult sentence, the parties have presented all of the relevant facts to resolve the issue, and the harm respondent would suffer if he is required to serve an adult sentence is clearly known.  Accordingly, we conclude that the respondent's contention is ripe for our determination.  See 
P.H.
, 145 Ill. 2d at 219.

Turning to the merits, we note that this court recently rejected an 
Apprendi
 challenge to the transfer provisions contained in section 5--805(2) of the Act (705 ILCS 405/5--805(2) (West 2000)).  See 
People v. Beltran
, 327 Ill. App. 3d 685 (2002).  Section 5--805(2)(a) creates a rebuttable presumption that a juvenile case should be transferred to criminal court if the court finds probable cause to believe that a minor has committed a Class X felony or aggravated discharge of a firearm and the minor is at least 15 years old.  705 ILCS 405/5--805(2)(a) (West 2000).  The trial court is required to transfer the case to criminal court unless it finds clear and convincing evidence that the minor would be amenable to the care, treatment, and training programs available through the facilities of the juvenile court.  705 ILCS 405/5--805(2)(b) (West 1998).  In 
Beltran
, the minor argued that this section violated 
Apprendi
 because it permitted the trial court to impose greater adult sanctions based upon these factors that were not submitted to a jury and proved beyond a reasonable doubt.  
Beltran
, 327 Ill. App. 3d at 690.

This court rejected the argument, finding that 
Apprendi
 did not apply to a trial court's determination as to the appropriate forum in which a minor's guilt is to be adjudicated.  
Beltran
, 327 Ill. App. 3d at 690-91.  We explained that, in a juvenile proceeding, due process does not require a jury.  
Beltran
, 327 Ill. App. 3d at 690, citing 
McKeiver v. Pennsylvania
, 403 U.S. 528, 545-46, 29 L. Ed. 2d 647, 661, 91 S. Ct. 1976, 1986 (1971).  Although we noted that due process requires proof beyond a reasonable doubt during the adjudicatory stage of a juvenile hearing, we further noted that such a standard does not apply to the dispositional stage of a juvenile proceeding.  
Beltran
, 327 Ill. App. 3d at 690, citing 
In re Winship
, 397 U.S. 358, 359 n.1, 25 L. Ed. 2d 368, 372 n.1, 90 S. Ct. 1068, 1070 n.1 (1970).  We explained:

"A hearing under section 5--805(2) is dispositional, not adjudicatory.  That is, the hearing determines not the minor's guilt but the forum in which his guilt may be adjudicated. [Citation.] Thus, although the juvenile court made findings that exposed him to a greater sanction, defendant had no due process right to have a jury make those findings beyond a reasonable doubt.  Because 
Apprendi
 bears only on the process due in criminal proceedings, the case is simply inapplicable here."  
Beltran
, 327 Ill. App. 3d at 690-91.

We believe that a similar conclusion is warranted in this case.  An EJJ prosecution, like a section 5--805(2) transfer, requires the trial court to make a procedural determination as to whether the juvenile should receive an adult sentence under chapter V of the Unified Code of Corrections (730 ILCS 5/5--1--1 
et seq.
 (West 2000)).  The only difference between section 5--805(2) and an EJJ prosecution is that the adult sentence in an EJJ prosecution is stayed pending the juvenile's successful completion of the juvenile sentence.  Because the trial court's determination to designate a proceeding as an EJJ prosecution does not adjudicate the minor's guilt, due process would not require a jury to make such a procedural determination.  See 
Beltran
, 327 Ill. App. 3d at 691.  Although we agree with respondent that, in designating a proceeding as an EJJ prosecution, the trial court may make findings that expose him to a greater sanction, he has no due process right to have a jury make those findings.  We therefore hold that, for the same reasons articulated in 
Beltran
, 
Apprendi
 is inapplicable to the present case.

We note that our conclusion is in accord with other Illinois courts that have examined the various transfer procedures contained in the Act.  For example, in 
P.H.
, the Illinois Supreme Court held that the "gang-transfer" provision contained in section 5--4(3)(a) of the Act did not violate due process, equal protection, double jeopardy, and the separation of powers.  In its discussion, the 
P.H.
 court noted that a juvenile has no common-law or constitutional right to adjudication under the Act.  
P.H.
, 145 Ill. 2d at 223.  The 
P.H.
 court explained that the juvenile system is a purely statutory creation and that the legislature has the authority to define the limits of the juvenile system.  
P.H.
, 145 Ill. 2d at 223.  As such, the determination of whether a person is tried in juvenile or criminal court is a matter of procedure.  
P.H.
, 145 Ill. 2d at 222.

More recently, in 
In re M.C.
, 319 Ill. App. 3d 713, 720 (2001), the First District held that the trial court erred in failing to apply the transfer provisions of section 5--805(2) of the Act.  Relying on 
P.H.
, the reviewing court noted that minor defendants do not have a constitutional right to be prosecuted through the juvenile court system.  
M.C.
, 319 Ill. App. 3d at 720.  The court also explained that, because the juvenile system is statutory, the legislature could decide to limit the applicability of the system.  Accordingly, the reviewing court concluded that the transfer provision was procedural in nature and did not "interfere with vested rights."  
M.C.
, 319 Ill. App. 3d at 720.

By enacting section 5--810, the legislature  once again has chosen to modify the juvenile system.  Once a juvenile proceeding is designated an EJJ prosecution and a minor is found guilty, the trial court is required to impose both a juvenile sentence and a conditional adult sentence.  As a minor respondent has no constitutional right to be prosecuted through the juvenile court system, the legislature's decision to require the imposition of a conditional adult sentence in certain instances does not result in a constitutional deprivation of due process.  Accordingly, for all of the reasons detailed above, we conclude that section 5--810 of the Act does not violate 
Apprendi
.

Respondent's final contention on appeal is that he cannot be sentenced as an adult because his minor status disqualifies him for participation in a TASC program.  As noted above, the trial court ordered that respondent be evaluated for possible participation in TASC.  However, TASC administrators refused to perform an evaluation of respondent because he was a minor.  Respondent argues that, if he is to be sentenced as an adult, he must be accorded all of the sentencing alternatives available to adults, including TASC.  Respondent argues that, because TASC services are not available to him because of his age, fairness dictates that he cannot be sentenced as an adult.

The State again argues that this contention is not ripe for consideration because any adult sentence imposed on remand will be stayed on the condition that respondent not violate the provisions of his juvenile sentence.  However, for the same reasons discussed in regard to respondent's 
Apprendi
 argument, we find that this issue is also ripe for our determination.  The parties have presented all of the relevant facts necessary to resolve the issue, and the harm that respondent would suffer if he has to serve an adult sentence is evident.  See 
P.H.
, 145 Ill. 2d at 219.  We therefore proceed to address the merits of respondent's contention.

Section 40--5 of the Alcoholism and Other Drug Abuse and Dependency Act (20 ILCS 301/40--5 (West 2000)) provides that, under certain circumstances, an addict or alcoholic who is charged or convicted of a crime may elect treatment under the supervision of a licensed program designated by the Illinois Department of Human Services.  Section 40--10 requires that, in instances where a trial court believes that an individual who is charged with or convicted of a crime suffers from alcoholism or other drug addiction and the individual qualifies under section 40--5, the trial court must advise the individual that he or she may be sentenced to probation if he or she elects treatment and is accepted for treatment by a designated program.  20 ILCS 301/40--10 (West 2000).  Section 40--15 further provides that a designated program "shall establish the conditions under which a parolee is accepted for treatment" and that "[n]o parolee may be placed under the supervision of a designated program for treatment unless the designated program accepts him for treatment."  20 ILCS 301/40--15 (West 2000).

In the present case, the record demonstrates that the trial court found that respondent met the conditions specified in section 40--5 and referred him to TASC for an evaluation.  Following the trial court's referral, the TASC administrators refused to accept respondent into treatment because he was a minor.  TASC's determination to reject respondent based upon his minor status was not within its statutory authority under section 40--15 to establish the conditions for acceptance into treatment.  20 ILCS 301/40--15 (West 2000).  This limited statutory grant of authority under section 40--15 permits TASC to exercise discretion in deciding whether to accept or reject individual persons for a TASC program.  In making such determinations, TASC will necessarily have to consider various subjective factors, including the individual's willingness to participate in treatment and the likelihood that treatment will be effective given the individual's psychological and physical condition.  In such a manner, TASC is able to distribute its limited treatment resources to those individuals who will most benefit from treatment.

However, section 40--15 does not permit TASC to reject certain groups of individuals based on objective factors unrelated to treatment, such as age, gender, or religion.  The legislature has already enunciated nine objective disqualifying factors in section 40--5.  Included among these disqualifying factors are that the individual has been convicted of a crime of violence, the individual has been convicted of certain drug offenses, the individual has a record of two of more convictions of violent crimes, and the individual has twice previously participated in a TASC program.  See 20 ILCS 301/40--5 (West 2000).  Age is not among the disqualifying factors listed in section 40--5.

Although respondent recognizes that a conditional prison term is statutorily authorized, he nonetheless argues that he should have the same opportunity to participate in TASC programs as would any other adult.  Since we are reversing the judgment of conviction and remanding this cause for further proceedings, we need not address respondent's argument further.
  Unless and until the legislature affirmatively declares that disqualification may be based upon age, gender, or religion, TASC may not reject the respondent minor solely because of his age. 

For the foregoing reasons, we reverse the judgment of the circuit court of Du Page County and remand the case for a new trial consistent with the views expressed in this opinion.

Reversed and remanded.

McLAREN and CALLUM, JJ., concur.