THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff, v. JAMEL BECK, Defendant (Jamel Beck, Petitioner-Appellant, v. Warden Kenneth Briley, Respondent-Appellee).

Fifth District    No. 5—01—0722

Opinion filed May 14, 2003.

Daniel M. Kirwan and Rita K. Peterson, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and William L. Browers and Colleen M. Griffin, Assistant Attorneys General, of counsel), for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

In 1986 a petition alleging that Jamel Beck was a delinquent minor (14 years of age) was filed in the circuit court of St. Clair County. The petition alleged that Beck had committed six counts of attempted murder, six counts of aggravated battery, and one count of home invasion. The prosecution of the case was later transferred from juvenile court to adult criminal court pursuant to former section 2—7(3)(a) of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 702—7(3)(a)). Beck later pled guilty and was sentenced to six consecutive 20-year terms of imprisonment. In 2000, Beck filed a petition for *habeas corpus* alleging that the consecutive sentences imposed by the court violated the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). The circuit court found that Beck's sentencing was entitled to reconsideration

under the Post-Conviction Hearing Act (725 ILCS 5/122—1 *et seq.* (West 2000)), in light of the holding in *Apprendi*. Beck's petition, however, was ultimately denied. Beck then filed a motion to reconsider, alleging that section 2—7 of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 702—7) was unconstitutional under *Apprendi*. The circuit court denied the motion, finding that *Apprendi* did not apply to the juvenile transfer proceedings. Beck brought this appeal. The sole issue for review is whether section 2—7, as it existed at the time Beck was transferred to adult criminal court, is unconstitutional. We affirm.

## I. BACKGROUND

On November 25, 1986, a petition was filed pursuant to the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 704—1 *et seq.*). The petition alleged that Beck had committed six counts of attempted murder and one count of aggravated battery. The petition alleged that Beck was delinquent, and it sought to have him declared a ward of the court. The same day, the State also filed a motion pursuant to former section 2—7(3)(a) of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 702—7(3)(a)), seeking to have Beck, 14 years of age, prosecuted under Illinois criminal law. After an evidentiary hearing, the court granted the State's motion to transfer Beck from juvenile court to adult criminal court. A grand jury later returned an indictment charging Beck with six counts of armed violence, six counts of attempted murder, six counts of aggravated battery, and one count of home invasion. Beck entered into a negotiated plea agreement in which he pled guilty to the six armed violence counts and the six aggravated battery counts. The court entered a judgment of conviction on Beck's plea of guilty and sentenced him to six consecutive 20-year terms of imprisonment.

Beck filed a timely motion to withdraw his guilty plea, which the court denied. Beck appealed. In *People v. Beck*, 190 Ill. App. 3d 748, 546 N.E.2d 1127 (1989), we vacated Beck's convictions for aggravated battery and affirmed his transfer under the Juvenile Court Act, as well as the court's imposition of consecutive sentences. In October 2000, Beck filed a petition for *habeas corpus* alleging that the court's imposition of consecutive sentences was unconstitutional under *Apprendi*. The circuit court found that the petition did not entitle him to a discharge, but the court found that he might be entitled to a reconsideration of his sentencing under the Post-Conviction Hearing Act (725 ILCS 5/122—1 *et seq.* (West 2000)), in light of the holding in *Apprendi*. However, the court later denied the petition, finding (1) that *Apprendi* did not apply to the consecutive sentencing, (2) that Beck had waived any perceived *Apprendi* violations when he entered the

negotiated guilty plea, and (3) that an *Apprendi* claim could not be brought under the Habeas Corpus Act (735 ILCS 5/10—101 *et seq.* (West 2000)). Beck filed a motion to reconsider, arguing that section 2—7(3)(a) of the Juvenile Court Act was unconstitutional under *Apprendi*. The court found that *Apprendi* did not apply to juvenile transfer proceedings, and the court denied the motion. Beck filed this timely appeal.

## II. ANALYSIS

On appeal, Beck argues that section 2—7(3)(a) of the Juvenile Court Act (as it existed at the time he was transferred to adult criminal court for prosecution) is unconstitutional because it can result in increased punishment due to facts not submitted to a jury and proved beyond a reasonable doubt, in violation of the United States Supreme Court's holding in *Apprendi*.

At the time Beck was transferred, section 2—7 provided in pertinent part as follows:

"Criminal prosecutions limited. (1) Except as provided in this Section, no minor who was under 17 years of age at the time of the alleged offense may be prosecuted under the criminal laws of this State or for violation of an ordinance of any political subdivision thereof.

\* \* \*

(3) If a petition alleges commission by a minor 13 years of age or over of an act which constitutes a crime under the laws of this State, and, on motion of the State's Attorney, a Juvenile Judge, \*\*\* after investigation and hearing but before commencement of the adjudicatory hearing, finds that it is not in the best interests of the minor or of the public to proceed under this Act, the court may enter an order permitting prosecution under the criminal laws.

(a) In making its determination on a motion to permit prosecution under the criminal laws, the court shall consider among other matters: (1) whether there is sufficient evidence upon which a grand jury may be expected to return an indictment; (2) whether there is evidence that the alleged offense was committed in an aggressive and premeditated manner; (3) the age of the minor; (4) the previous history of the minor; (5) whether there are facilities particularly available to the Juvenile Court for the treatment and rehabilitation of the minor; and (6) whether the best interest of the minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority. \*\*\* (b) If criminal proceedings are instituted, the petition shall be dismissed insofar as the act or acts involved in the criminal proceedings are concerned. Taking of evidence in an

adjudicatory hearing in any such case is a bar to criminal proceedings based upon the conduct alleged in the petition." Ill. Rev. Stat. 1985, ch. 37, par. 702—7(3)(a).

Beck notes that if he had been adjudicated in juvenile court, he would have faced a maximum punishment of commitment to the juvenile division of the Department of Corrections until his twenty-first birthday. Beck notes further that as the language of section 2—7(3)(a) demonstrates above, the judge considering the State's motion to transfer is required to engage in findings of fact. Beck contends that the trial court judge's determination that it was not in his or the public's "best interest" to proceed with his case under the Juvenile Court Act subjected him to increased punishment. Beck contends that the required findings of fact made by a judge, instead of a jury, and the resulting increased punishment that could result from such findings render section 2—7(3)(a) unconstitutional under *Apprendi*. Beck contends that, despite the fact that section 2—7 is not a sentencing law and does not, itself, impose a particular sentence, it nevertheless operates to change the entire sentencing scheme under which certain minors are sentenced and therefore subjects them to increased punishment.

In *Apprendi*, the Supreme Court held unconstitutional a New Jersey "hate crime" statute that permitted the trial court to impose a prison sentence of up to 20 years where it found, by a preponderance of the evidence, that a defendant's purpose in acting was to intimidate a victim due to the victim's race. The *Apprendi* Court held that because the findings the trial court was permitted to make involved an element of the crime, the defendant was denied his due process right to a determination of guilt beyond a reasonable doubt by a jury on each element of the crime charged. *Apprendi*, 530 U.S. at 477, 147 L. Ed. 2d at 447, 120 S. Ct. at 2356. It is on this basis that the *Apprendi* Court held as follows: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury[ ] and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63. However, section 2—7, at issue here, does not involve the same concerns.

Beck's argument is not the first to make an *Apprendi*-based challenge to the provisions of the statute governing juvenile court proceedings that allow a minor to be exposed to the criminal law. In *People v. Beltran*, 327 Ill. App. 3d 685, 765 N.E.2d 1071 (2002), a 15-year-old defendant similarly argued that section 5—805 of the Juvenile Court Act of 1987 (705 ILCS 405/5—805 (West 1998)) was unconstitutional in light of the holding in *Apprendi*. In that case, under section

5—805(2)(a) of the Juvenile Court Act of 1987 (705 ILCS 405/5—805(2)(a) (West 1998)), the State obtained a presumptive transfer of the defendant from juvenile court to adult criminal court to pursue sanctions available under the criminal law. Under section 5—805(2)(a) the State was required to allege that the minor defendant had committed a Class X felony or aggravated discharge of a firearm and that the minor was at least 15 years old. When the juvenile court *finds* that there is probable cause to believe that the State's allegations are true, a rebuttable presumption that the case should be transferred is created. See 705 ILCS 405/5—805 (West 2000). In *Beltran,* like the case *sub judice,* the defendant minor noted that when the State initially petitioned to adjudicate him delinquent, he faced a maximum sanction no greater than commitment in the juvenile division of the Department of Corrections until his twenty-first birthday. The *Beltran* defendant argued that after the juvenile court judge found the necessary elements for transfer, he faced a much greater sanction.

The *Beltran* court held that a hearing under section 5—805 is a juvenile proceeding and not a criminal prosecution, as was the case in *Apprendi.* The court determined that whether the defendant was denied due process depends upon the standards applicable to the juvenile proceeding that resulted in the transfer, *not* the standards of due process applicable to criminal prosecutions. The court noted that due process does not require a jury in juvenile proceedings. The court found that a hearing pursuant to section 5—805 is dispositional in nature. While due process requires proof beyond a reasonable doubt during the adjudicatory stage, at which a minor's guilt or innocence is determined, due process does not require such a standard of proof for a dispositional hearing. The *Beltran* court concluded that *Apprendi* bears only upon the process due in criminal court proceedings and does not apply to dispositional proceedings under section 5—805(2). The court reasoned that, though the juvenile court makes findings that expose minors to greater sanctions under section 5—805(2), the minors do not have a due process right to have a jury make those findings beyond a reasonable doubt.

Furthermore, another recent decision, *In re Matthew M.,* 335 Ill. App. 3d 276, 780 N.E.2d 723 (2002), similarly found that *Apprendi* did not apply to a provision of the Juvenile Court Act of 1987 which allowed a minor to be held in juvenile court and exposed to both criminal law and adult sentencing (705 ILCS 405/5—810 (West 2000)). In *In re Matthew M.,* a petition was filed in juvenile court to adjudicate a minor delinquent. Pursuant to section 5—810 of the Juvenile Court Act of 1987 (705 ILCS 405/5—810 (West 2000)), the State moved to designate the proceedings as an extended jurisdiction juvenile (EJJ) prosecution.

When the State moves to designate proceedings against a minor as an EJJ prosecution and the court designates the proceedings as such, the trial court is allowed to impose one or more of the penalties provided for in section 5—710 of the Juvenile Court Act of 1987 (705 ILCS 405/ 5—710 (West 2000)) *and* a conditional adult criminal sentence. In seeking an EJJ prosecution, the State must allege that the minor was 13 years of age or older when he committed an offense that would be a felony if committed by an adult and that there is probable cause to believe that the allegations in the delinquency petition and the motion for EJJ prosecution are true. 705 ILCS 405/5—810(1) (West 2000). If the trial court finds that there is probable cause to believe that the allegations are true, the court must then designate the proceeding as an EJJ prosecution unless the court finds, by clear and convincing evidence, that adult sentencing would not be appropriate for the minor based on the seriousness of the offense alleged, the minor's history of delinquency, the minor's age, the minor's culpability, whether the offense was committed in an aggressive or premeditated manner, and whether the minor used or possessed a deadly weapon when committing the offense alleged. 705 ILCS 405/5—810(1)(b) (West 2000).

The minor in *In re Matthew M.* argued that section 5—810 violated *Apprendi* because it permitted the trial court to increase the maximum sanction that could be imposed based upon the trial court's determination of the existence of certain factors that were not submitted to a jury or proved beyond a reasonable doubt. Relying on *Beltran*, the court in *In re Matthew M.* concluded that because the trial court's determination to designate a proceeding as an EJJ prosecution does not adjudicate the minor's guilt, due process does not require a jury to make the findings involved in the procedural determination. *In re Matthew M.*, 335 Ill. App. 3d at 288-89, 780 N.E.2d at 734. Consequently, the *In re Matthew M.* court held that *Apprendi* does not apply to EJJ prosecutions.

In sum, we find that section 2—7 simply provides for a procedure by which a case can be removed from the juvenile division of the circuit court to the criminal division. See *People v. P.H.*, 145 Ill. 2d 209, 222, 582 N.E.2d 700, 706 (1991). For the reasons stated in both *Beltran* and *In re Matthew M.*, we conclude that a section 2—7 hearing is dispositional in nature rather than adjudicatory and therefore does not implicate the constitutional concerns raised in *Apprendi*. Accordingly, the circuit court did not err in denying Beck's petition.

We note that a portion of each party's brief is devoted to argument concerning the nature of Beck's petition, *i.e.*, whether his petition was one for *habeas corpus* or one seeking relief under the Post-Conviction Hearing Act (725 ILCS 5/122—1 *et seq.* (West 2000)). In light of our

holding that section 2—7 of the Juvenile Court Act does not violate *Apprendi*, we do not reach this issue beyond our determination that the circuit court did not err in denying Beck's petition in either event.

## III. CONCLUSION

For the reasons stated, the judgment of the circuit court is affirmed.

Affirmed.

MAAG and GOLDENHERSH, JJ., concur.