In re M.C., a Minor (The People of the State of Illinois, Petitioner-Appellant, v. M.C., a Minor, Respondent-Appellee).

First District (3rd Division)   No. 1—99—0703

Opinion filed February 28, 2001.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Mary L. Boland, and Douglas P. Harvath, Assistant State's Attorneys, of counsel), for the People.

Joseph R. Lopez and Marc W. Martin, both of Chicago, for appellee.

JUSTICE WOLFSON delivered the opinion of the court:

There are two issues to decide in this case. First, whether the new transfer provision of the Juvenile Court Act of 1987 applies to this case. See 705 ILCS 405/5—805 (West Supp. 1999) (added by the Juvenile Justice Reform Provisions of 1998 (Pub. Act 90—590, eff. January 1, 1999)). The trial court held it did not. Second, whether the trial court erred when it denied the State's motion to transfer the minor respondent (M.C.) to the criminal division. We reverse and remand.

On August 13, 1998, the State filed a petition for adjudication of wardship charging M.C. was delinquent because he committed the offenses of aggravated battery with a firearm, aggravated discharge of a firearm, aggravated battery, possession of a controlled substance, and

possession of cannabis. The petition alleged M.C. shot a young man in the foot and a young woman in the stomach on August 12, 1998.

The State also filed a motion to transfer M.C. from the juvenile division to the criminal division pursuant to section 5—4(3.3) of the Juvenile Court Act of 1987 (the 1996 transfer provision) (705 ILCS 405/5—4(3.3) (West 1996)).

■ The 1996 transfer provision, section 5—4(3.3)(a), provided: If the State's Attorney files a motion to prosecute a minor, 15 years of age or older, in criminal court, and the State's Attorney's wardship petition charges the minor with, *inter alia*, aggravated discharge of a firearm or aggravated battery with a firearm

> "and, if the juvenile judge designated to hear and determine motions to transfer a case for prosecution in the criminal court determines that there is probable cause to believe that the allegations in the petition and motion are true, there is a rebuttable presumption, that the minor is not a fit and proper subject to be dealt with under the Juvenile Court Act of 1987, and that, except as provided in paragraph (b), the case should be transferred to the criminal court." 705 ILCS 405/5—4(3.3)(a) (West 1996).

Paragraph (b) provides:

> "The judge shall enter an order permitting prosecution under the criminal laws of Illinois unless the judge makes a finding based on evidence that the minor would be amenable to the care, treatment, and training programs available through the facilities of the juvenile court based on an evaluation of the following:
>
> (i) The circumstances and gravity of the offense alleged to have been committed by the minor.
>
> (ii) The age of the minor.
>
> (iii) The degree of criminal sophistication exhibited by the minor.
>
> (iv) Whether there is a reasonable likelihood that the minor can be rehabilitated before the expiration of the juvenile court's jurisdiction.
>
> (v) The minor's previous history of delinquency.
>
> (vi) Whether the offense was committed in an aggressive, premeditated or calculated manner.
>
> (vii) Whether there are sufficient facilities available to the juvenile court for the treatment and rehabilitation of the minor." 705 ILCS 405/5—4(3.3)(b) (West 1996).

On January 25, 1999, the trial court held a hearing on the prosecution's transfer motion. Dr. Golden Shultz, a psychologist at the department of forensic services, testified for M.C. Probation officer Tanya Kira testified for the prosecution.

At the conclusion of the hearing, the trial court found the State

had met its burden of providing sufficient evidence to support the charges against M.C. The court entered a finding of probable cause and found "there is a rebuttable presumption that the minor is not a fit and proper subject for adjudication in Juvenile Court." The court proceeded to analyze M.C.'s case under the section 5—4(3.3)(b) factors.

1. Circumstances and gravity of the offense

The court found M.C.'s alleged conduct "certainly is a grave offense." But, the court added, "neither one of these people [the victims] were seriously injured." The court noted the young man was shot in the foot, and the young woman was not shot since the bullet passed through her clothing.

2. Age of minor

The court found M.C.'s age at the time of his alleged offense, 16 years and 11 months, was obviously "on the high scale of the juvenile age bracket." But, the court observed, "timing is everything in life. The fact that he wasn't (17) when this occurred is something I can consider." The court summarized: "[W]hile I could look at it as a mark against him that he was almost (17) when he's charged with this offense, I can also look at it that he wasn't (17); and he was meant to be charged as a juvenile and that's the way I choose to look at it today based on the totality of the evidence ***."

3. Degree of criminal sophistication

The court candidly acknowledged, "I'm not quite sure what that term means, *** and I'm not sure how that differentiates significantly from No. (Five), which is the previous history of the minor ***." The court found M.C. had a criminal record, including delinquency adjudications for stolen car possession and drug possession, as well as four station adjustments.

4. Reasonable likelihood of rehabilitation before age 21

The court found M.C. had responded favorably to the structure and the services of the juvenile home since his detention. The court also found M.C. successfully completed probation after his conviction for stolen car possession. The court added M.C.'s parents "[were] extremely interested in his well being; have stuck by him in spite of the fact that he has caused so much agony up to this point in time."

5. Previous history of delinquency

The court did not discuss this factor independent of M.C.'s "criminal sophistication."

6. Aggressive, premeditated, or calculated offense

The court found M.C.'s alleged conduct was aggressive and said, "it appears to be premeditated or it's just more of a gang drive-by, stupid incident. I'm not sure how it came about *** so premeditation is just a little hard to assess ***."

7. Sufficient treatment and rehabilitation facilities

The court found "there are juvenile facilities available in order to treat him—the Juvenile Department of Corrections offers, has education and rehabilitation and counseling on a mandatory basis."

In denying the prosecution's motion to transfer, the court concluded:

> "Based on the totality of the circumstances, I don't believe that this young man nor society will benefit from his being tried as an adult as such. I believe the Defense has in fact rebutted the presumption. I believe that this young man is a fit and proper subject to be adjudicated in the Juvenile Court as such."

Following the presumptive transfer hearing, the State appealed to this court. On appeal, M.C. contended the 1996 transfer provision— section 5—4(3.3), as added to the Juvenile Court Act of 1987 by the Safe Neighborhood Act (Pub. Act 88—680, eff. January 1, 1995)— violated the "single subject rule" of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8(d)). M.C. was right. See *People v. Cervantes*, 189 Ill. 2d 80, 723 N.E.2d 265 (1999).

■ We noted, however, section 5—4(3.3) had been repealed before *Cervantes*. Its replacement, section 5—805(2), became effective on January 1, 1999. See 705 ILCS 405/5—805(2) (West Supp. 1999). Paragraph (b) of the new statute provides:

> "The judge shall enter an order permitting prosecution under the criminal laws of Illinois unless the judge makes a finding based on *clear and convincing* evidence that the minor would be amenable to the care, treatment, and training programs available through the facilities of the juvenile court based on an evaluation of the following:
>
>     (i) *The seriousness of the alleged offense*;
>
>     (ii) The minor's history of delinquency;
>
>     (iii) The age of the minor;
>
>     (iv) *The culpability of the minor in committing the alleged offense*;
>
>     (v) Whether the offense was committed in an aggressive or premeditated manner;
>
>     (vi) *Whether the minor used or possessed a deadly weapon when committing the alleged offense*;
>
>     (vii) *The minor's history of services, including the minor's willingness to participate meaningfully in available services*;
>
>     (viii) Whether there is a reasonable likelihood that the minor can be rehabilitated before the expiration of the juvenile court's jurisdiction;
>
>     (ix) The adequacy of the punishment or services available in the juvenile justice system.

In considering these factors, *the court shall give greater weight to the seriousness of the alleged offense and the minor's prior record of delinquency than to the other factors listed in this subsection.*" (Emphasis added.) 705 ILCS 405/5—805(2)(b) (West Supp. 1999).

On January 25, 1999, after the effective date of the new transfer provision, the trial court denied the prosecution's motion.

We remanded this case to allow the parties to argue, and the court to determine, whether section 5—805(2) applies and, if so, what effect it has on the court's decision to reject the prosecution's transfer motion. *In re M.C.*, No. 1—99—0703 (1999) (unpublished order under Supreme Court Rule 23).

The State disagrees with the trial court's finding that the new transfer provision of the Juvenile Court Act of 1987 (the 1999 transfer provision) (705 ILCS 405/5—805(2) (West Supp. 1999)) does not apply retroactively, and it contends the court erred when it refused to transfer M.C.

■ Whether the 1999 transfer provision applies to this case involves a question of law, and the standard of review is *de novo*. *People v. Saunders*, 288 Ill. App. 3d 523, 525, 680 N.E.2d 790 (1997). Whether the trial court properly evaluated statutory factors when it denied the motion to transfer M.C. to the criminal division is a question of fact, and the standard of review is whether the trial court abused its discretion. *People v. Fuller*, 292 Ill. App. 3d 651, 658, 686 N.E.2d 6 (1997); *In re J.E.*, 282 Ill. App. 3d 794, 801, 668 N.E.2d 1052 (1996).

■ The State contends the 1999 transfer provision does not violate the constitutional prohibitions against *ex post facto* laws. See U.S. Const., art. I, §§ 9, 10; Ill. Const. 1970, art. I, § 16. These constitutional provisions restrain Congress and the state legislatures from enacting arbitrary or vindictive legislation and assure that statutes give fair warning of their effect. *Fletcher v. Williams*, 179 Ill. 2d 225, 229, 688 N.E.2d 635 (1997). A law is *ex post facto* if it is both "retroactive" and "disadvantageous" to the defendant. *Fletcher*, 179 Ill. 2d at 230. A law disadvantages a defendant if it (1) criminalizes an act that was innocent when done, (2) increases the punishment for a previously committed offense, or (3) alters the rules of evidence by making a conviction easier. *People v. Franklin*, 135 Ill. 2d 78, 107, 552 N.E.2d 743 (1990).

■ The Juvenile Court Act's transfer provision is a procedural mechanism used to determine what division of the circuit court a respondent will be tried in. *People v. P.H.*, 145 Ill. 2d 209, 222, 582 N.E.2d 700 (1991) ("Whether a person is tried in juvenile or criminal court is a matter of procedure rather than jurisdiction"). The 1999 transfer provision does not constitute any kind of "punishment."

■ The legislature has determined that certain minors are not eligible for continuation in the administrative scheme of the juvenile court. *People v. J.S.*, 103 Ill. 2d 395, 402, 469 N.E.2d 1090 (1984). Minor defendants do not have a constitutional right to be treated as juveniles, and, because the juvenile system is statutory, the legislature has the authority to define the limits of the juvenile system. See *P.H.*, 145 Ill. 2d at 223.

■ Because the decisions persuade us the transfer hearing is procedural in nature, we do not see the 1999 transfer provision reaching back to "interfere with vested rights." *First of American Trust Co. v. Armstead*, 171 Ill. 2d 282, 289, 664 N.E.2d 36 (1996). See also *Dobbert v. Florida*, 432 U.S. 282, 293-94, 53 L. Ed. 2d 344, 356, 97 S. Ct. 2290, 2298 (1977) (changes in the state's death penalty procedures "simply altered the methods employed in determining whether the death penalty was to be imposed").

In this case, the 1999 transfer provision is not "disadvantageous," and application of the 1999 transfer provision does not implicate *ex post facto* analysis. A presumption of transfer arose when the juvenile court found probable cause to believe that the allegations against M.C. were true. 705 ILCS 405/5—805(2)(a) (West Supp. 1999). The judge was required to enter a transfer order unless he found, by "clear and convincing evidence," that M.C. was amenable to treatment and care in the juvenile system based on an analysis of the statutory factors. 705 ILCS 405/5—805(2)(b) (West Supp. 1999).

The State did not have to show all statutory factors weigh against the minor to justify transfer to adult court. *In re J.O.*, 269 Ill. App. 3d 287, 289, 645 N.E.2d 1035 (1995). The State had to present enough evidence to persuade the juvenile court to grant the motion to transfer. *In re J.E.*, 282 Ill. App. 3d at 800-01. It would take "clear and convincing evidence" to defeat the transfer. See 705 ILCS 405/5—805(2)(b) (West Supp. 1999).

■ M.C., just short of age 17, while a passenger in a moving car, fired five shots at a group of people, striking one boy in the foot and grazing the clothing of a 10-year-old girl. He is a regular in the juvenile justice system, gang affiliated, with two delinquency findings and four station adjustments. His probation officer recommended that he be tried as an adult.

Dr. Schultz, the psychologist who testified on M.C.'s behalf, agreed that the respondent's criminal activity was becoming more serious as he grew older, noting that the current charge is the "most serious yet." He would not take a position and did not recommend against transfer. He said he was "not making a recommendation regarding transfer explicitly." Although the court found a reasonable likelihood

that M.C. could be rehabilitated before age 21, the court made this finding despite Dr. Schultz's admission he could not substantiate his claims that M.C. responded well to punishment, and M.C.'s criminal activity was getting progressively worse as he got older.

Although there are crimes perpetrated by juveniles where the lack of premeditation and calculation may be relevant factors that weigh against transfer, the facts of this case—a drive-by shooting—do not defeat a presumption that M.C. should be tried as an adult. The trial court did not look to the plain language of the statute, requiring the court to determine "the seriousness of the alleged offense," "whether the offense was committed in an aggressive or premeditated manner," "whether the minor used or possessed a deadly weapon when committing the alleged offense," and, in considering these factors, whether the court gave "greater weight to the seriousness of the alleged offense and the minor's prior record of delinquency than to the other factors listed in" section 5—805(2)(b). 705 ILCS 405/5—805(2)(b) (West Supp. 1999). We have done so.

Applying the 1999 transfer provision to the facts of this case, we conclude the trial court erred when it declined to transfer M.C. to the criminal division. We reverse the order denying transfer and remand this case to the juvenile court with directions to transfer the case to the criminal division.

Reversed and remanded.

CAHILL, P.J., and BURKE, J., concur.