SECOND DIVISION

MARCH 2, 2004

No. 1-02-0662 and 02-0871 (Cons.)

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the 

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

    v.      ) No. 00 CR 15473

          )

JUAN PEREA and GEORGE GALARZA,          ) The Honorable   

     ) Clayton J. Crane,

Defendants-Appellants.     ) Judge Presiding.

JUSTICE GARCIA delivered the opinion of the court:

In October 1999, the defendants, Juan Perea and George Galarza, and a third offender, Lee Jimenez, who acted with the defendants but is not a party to this appeal, were charged in juvenile court with attempted first degree murder and aggravated battery for attacking Samuel Avalos.  In June 2000, on the State's motion, the defendants were transferred from the juvenile court system into the criminal court system pursuant to the presumptive transfer statute (Presumptive Transfer Statute) (705 ILCS 405/5-805(2)(a) (West Supp. 1999) (added by the Juvenile Justice Reform Provisions of 1998 (Pub. Act 90-590, eff. January 1, 1999)) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-2 
et
 
seq
. (West 1998)).  A grand jury then returned an indictment charging the defendants with (1) attempted first degree murder (720 ILCS 5/8-4, 9-1 (West 1998)); (2) armed robbery (720 ILCS 5/18-2(a) (West 1998)); (3) armed violence (720 ILCS 5/33A-2 (West 1998)); and (4) aggravated battery (720 ILCS 5/12-4(b)(1), (b)(8) (West 1998)). 

In January 2002, the trial court found the defendants guilty of armed robbery (720 ILCS 5/18-2(a) (West 1998)) and aggravated battery (720 ILCS 5/12-4(b)(1), (b)(8) (West 1998)).  Following their convictions, the defendants filed posttrial motions with the trial court seeking a new trial and requesting that the trial court exercise its discretion and send the defendants to the juvenile court for sentencing.  The trial court denied both motions and sentenced the defendants under the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/1-1 
et
 
seq
. (West 1998)).

The defendants appeal arguing (1) the Presumptive Transfer Statute is ambiguous regarding how to sentence juveniles transferred for one offense but convicted of another and, therefore, the trial court abused its discretion in sentencing the defendants as adults instead of as juveniles; (2) the Presumptive Transfer Statute violates the due process and equal protection clauses of the United State and Illinois Constitutions because there is no provision made for juveniles who are acquitted of the offense for which they were transferred; (3) the Presumptive Transfer Statute is unconstitutionally vague and denies juveniles due process because it fails to provide guidance to trial courts sentencing juveniles acquitted of the offense triggering the Presumptive Transfer Statute; (4) the Presumptive Transfer Statute violates 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), because the defendants were exposed to enhanced sentences despite the fact those sentence enhancing factors were not proven beyond a reasonable doubt; and (5) the defendants were wrongly convicted of armed robbery because property was stolen from Avalos before he was struck with a weapon.        

BACKGROUND

Around 9 p.m. on the evening September 29, 1999, Avalos was walking home when he was attacked by the defendants.  At the time of the attack, Perea was 15 years old and Galarza was 16 years old.  

In October 1999, the defendants were initially charged in juvenile court with attempted first degree murder and aggravated battery.  However, the State petitioned the juvenile court to permit prosecution of the defendants in the criminal court system pursuant to the Presumptive Transfer Statute in the Juvenile Court Act (705 ILCS 405/5-805(2)(a) (West Supp. 1999)) and based on the attempted first degree murder charge facing the defendants.  The juvenile court granted the State's motion to transfer and in June 2000, a grand jury returned an indictment charging the defendants under the Criminal Code with (1) attempted first degree murder (720 ILCS 5/8-4, 9-1 (West 1998)); (2) armed robbery (720 ILCS 5/18-2(a) (West 1998)); (3) armed violence (720 ILCS 5/33A-2 (West 1998)); and (4) aggravated battery (720 ILCS 5/12-4(b)(1), (b)(8) (West 1998)).  All charges arose from the attack on Avalos.  

In October 2001, the defendants filed motions for severance which were granted by the trial court.  The defendants waived a jury trial.  In December 2001, a bench trial was held.

Avalos testified that on September 29, 1999, he was walking home through the 2600 block of South Ridgeway Avenue in Chicago, Illinois.  Avalos remembers seeing some people across the street and then he woke up in the hospital.  Avalos testified he was hospitalized for five months after the attack and had to undergo multiple surgeries on his brain, throat, and abdomen.  Although Avalos has had rehabilitative therapy, he cannot walk normally, his speech is slurred, and he needs glasses.

George Avila testified that at the time of the attack he lived in the 2600 block of South Ridgeway Avenue and was at home with his family on the evening of September 29, 1999.  Avila heard screams coming from the front of his home.  Avila ran outside and saw four people hitting and kicking a man.  Avila called to his mother to notify the police.  Avila testified he did not recognize the victim but had seen the attackers before; however, at trial Avila could not identify the attackers.  

At trial Avila was confronted with a handwritten statement dated from early October 1999, in which he identified Galarza as "G-dog" and Perea as "Little Ghost."  In his October 1999 statement, Avila stated he saw Galarza and Perea beating up the victim, witnessed Galarza take off the victim's sweater and shoes, and watched as Galarza, after initially walking away, came back to kick the victim in the face.  Avila also saw Jimenez throw a concrete block at the victim's head.  When shown a photo of the lineup he viewed in October 1999, Avila identified Jimenez as the man who threw the rock and Galarza as the man who removed the victim's shoes and sweater.   

Avila's neighbor, Gladys Naranjo, testified she and her boyfriend were in her family's backyard on September 29, 1999.  Gladys testified she heard a bottle break and screaming.  Gladys's mother and brother came out of the house to investigate the cause of the noise.  Gladys, her mother, and her brother found a man lying on the ground between their home and the next-door neighbor's home; the man had been beaten and was unconscious.  Gladys did not recognize the beaten man; however, she identified Galarza as "G-dog" and testified that Galarza approached the victim and kicked him in the face.  In early October 1999, Gladys viewed a lineup at the police station and identified Galarza.                       

Hector Naranjo, Gladys's brother, testified he was in the living room of his home when he heard yelling and a bottle breaking.  Hector saw three people beating up a man, he saw the man fall, and he saw one of the attackers drop a rock on the man's head.  Hector specifically testified Galarza and Perea were present when the other attacker dropped a concrete block on the victim's head.  Hector recognized the attackers and had seen them often in the neighborhood.  Hector identified two of the attackers: Perea, whom he knew as "Little Ghost," and Galarza, whom he knew as "G-dog."  Hector specifically testified he saw Galarza holding Avalos while Perea beat him. 

Dr. Hernando Torres, chief of neurosurgery at Mt. Sinai Hospital, testified he treated Avalos on September 29, 1999, when he was admitted to the hospital in an unconscious state and bleeding from the back of his head.  Dr. Torres performed a craniotomy on Avalos in order to relieve the swelling caused by the injuries he had sustained.  Three weeks later Avalos was transferred for rehabilitation.

Mike Miller, a detective with the Chicago police department, testified he was assigned to investigate Avalos's beating.  Miller testified he was unable to interview Avalos so he went to the scene and found fresh blood, a large piece of concrete, and broken beer bottles.  In late September 1999, Miller received information from witnesses regarding the nicknames of two of the three offenders and that the offenders were members of the Ridgeway Boys street gang.  Miller brought the three defendants to the police station and placed them in a lineup with three additional participants.  Four witnesses viewed the lineup and the three defendants were arrested.  

Detective Donald Flaherty testified he assisted in conducting a six-man lineup. Flaherty stood with the witnesses who viewed the lineup.  Gladys Naranjo identified Galarza.  Avila identified all three defendants.  There were two other witnesses to the lineup as well; three of the four witnesses identified Perea and all four identified Galarza.     

James Snaidauf, a forensic scientist with the Illinois State Police, testified he examined a broken beer bottle recovered from the scene and that the print impressions left on the bottle matched those of Perea.             

Assistant State's Attorney George Canellis testified he spoke with Galarza on October 2, 1999.  Canellis testified Galarza made a videotaped confession.  The videotape was introduced as evidence only in Galarza's trial.  In Galarza's videotaped statement he admits to walking with Jimenez and Perea and noticing Avalos walking through the neighborhood.  Galarza, Jimenez, and Perea suspected Avalos was in a rival gang and began chasing him.  When Galarza, Jimenez, and Perea caught up with Avalos, Galarza hit him in the face.  Galarza, Jimenez, and Perea hit Avalos numerous times before he fell down.  Galaros admitted that once Avalos was down he, Jimenez, and Perea began kicking him.  Later, Jimenez grabbed a concrete block with both hands and dropped it on Avalos's face from shoulder height.  Galarza admitted it sounded as though Avalos was choking on his own blood so Galarza kicked him again and then went home.

The trial court determined Jimenez was guilty of attempted first degree murder (720 ILCS 5/8-4, 9-1 (West 1998)) and armed violence (720 ILCS 5/33A-2 (West 1998)) based on his action of throwing the concrete block at Avalos's head.  However, the trial court concluded Galarza and Perea were not accountable for Jimenez's actions and, therefore, not guilty of either attempted first degree murder or armed violence.  Nevertheless, the trial court did find Galarza and Perea guilty of armed robbery (720 ILCS 5/18-2(a) (West 1998)) and aggravated battery (720 ILCS 5/12-4(b)(1), (b)(8) (West 1998)).

In mid-January 2002, the defendants appeared before the trial court on a posttrial motion seeking a new trial.  The defendants argued against the finding of armed robbery (720 ILCS 5/18-2(a) (West 1998)), based on testimony that (1) Avalos was unconscious and (2) the concrete block had been thrown after Avalos's shoes and sweater were taken.  Therefore, the defendants argued, their actions were more akin to robbery (720 ILCS 5/18-1(a) (West 1998)).  The trial court found the facts of this case conducive to a finding of armed robbery because, "even though the victim was incapacitated at such times as those items were removed, I find the acts [of dropping the concrete block on Avalos's head and taking Avalos's sweater and shoes were] contemporaneous."  The trial court then denied the defendants' motion for a new trial.  

A hearing on the defendants' motion to remove the case to juvenile court for resentencing was then rescheduled until late January 2002.  At that time, the defendants argued that because they were not convicted of the offense for which they were presumptively transferred from the juvenile court (
i.e.,
 attempted first degree murder), the trial court should invoke its discretion and return the defendants to the juvenile court system for sentencing.  The State argued the trial court had no discretion regarding the sentencing of the defendants as adults.  In the alternative, the State argued that even if the trial court believed it had discretion, it should not exercise it and instead sentence the defendants as adults based on the brutal nature of their acts.  

The trial court cited to 
People v. Brown
, 301 Ill. App. 3d 995, 705 N.E.2d 162 (1998), and determined it did have discretion to send the defendants to the juvenile court for sentencing.  However, the trial court found it within its discretion to sentence the defendants as adults based on the fact they were found guilty beyond a reasonable doubt of armed robbery (720 ILCS 5/18-2(a) (West 1998)), a Class X felony (720 ILCS 5/18-2(b) (West 1998)).  Thus, the trial court denied the defendants' motion to transfer.    

The trial court then sentenced Perea under the Criminal Code to seven years in the Illinois Department of Corrections (DOC) based on the armed robbery conviction (720 ILCS 5/18-2(a) (West 1998)).  Perea's aggravated battery conviction (720 ILCS 12-4(b)(1), 
(b)
(8) (West 1998)) was to merge.  The trial court also sentenced Galarza to nine years in DOC on the armed robbery conviction (720 ILCS 5/18-2(a) (West 1998)); Galarza's aggravated battery conviction (720 ILCS 5/12-4(b)(1), (b)
(8) (West 1998)) was also to merge.  It is from the denial of the defendants' post-trial motions, their convictions, and their sentences that they now appeal.

ANALYSIS

I. Ambiguity in the Presumptive Transfer Statute 

The defendants first argue that the presumptive transfer statute is unclear and ambiguous because it contains no provision for sentencing a minor convicted of a charge other than the one used by the State to transfer them from the juvenile court system into the criminal court system.  The State maintains the statute is unambiguous and that the trial court correctly sentenced the defendants as adults because they were convicted of armed robbery (720 ILCS 5/18-2(a) (West 1998)), itself a predicate felony under the Presumptive Transfer Statute (705 ILCS 405/5-805(2)(a) (West Supp. 1999)).  The State also argues that although the trial court determined it was within its discretion to sentence the defendants as adults, it had no such discretion as the statute clearly presumes a juvenile over 15 years old who is charged with a Class X felony will be tried and sentenced as an adult.

The threshold question we must resolve is one of statutory construction, determining the meaning of section 5-805(2)(a).  (705 ILCS 405/5-805(2)(a) (West Supp. 1999).  The guiding principals of statutory construction are well settled.  We consider the intent of the legislature.  
In re Marriage of Murphy
, 203 Ill. 2d 212, 219, 786 N.E.2d 132 (2003).  "We may consider the reason and necessity for the law, the evils it was intended to remedy, and its ultimate aims."  
Murphy
, 203 Ill. 2d at 219.  We also presume that the legislature did not intend an absurd or unjust result.  However, our inquiry always begins with the language of the statute, "the surest and most reliable indicator of legislative intent."  
Murphy
, 203 Ill. 2d at 219.  "When possible, the court should interpret the statute according to the plain and ordinary meaning of the language."  
People v. Donoho
, 204 Ill. 2d 159, 171, 788 N.E.2d 707 (2003), citing 
Paris v. Feder
, 179 Ill. 2d 173, 177, 688 N.E.2d 137 (1997).  The interpretation of a statute is reviewed 
de novo
.  
Paris
, 179 Ill. 2d at 177-78.             

Section 5-805(2)(a) of the Juvenile Court Act permits the prosecution of a minor 15 years of age or over under the criminal laws for, 
inter alia
, a Class X felony, upon a motion to transfer from the State if the juvenile court determines there is probable cause to believe that the petition is true.  705 ILCS 405/5-805(2)(a) (West Supp. 1999).  In order to defeat a request by the State to transfer such a minor, the minor must prove by "clear and convincing evidence" that he "would be amenable to the care, treatment, and training programs available through the facilities of the juvenile court."  705 ILCS 405/5-805(2)(b) (West Supp. 1999).  Therefore, once the juvenile court found probable cause to believe that the allegations against the defendants were true, a presumption of transfer arose and the juvenile court was required to enter a transfer order unless it found by clear and convincing evidence that the defendants were amenable to treatment and care in the juvenile court system.  
In re M.C.
, 319 Ill. App. 3d 713, 720, 745 N.E.2d 122 (2001).         

In initially transferring the defendants from the juvenile court system to the criminal court system, the juvenile court began by noting the statutory factors and nonstatutory considerations evidencing whether the defendants would be amenable to the care and treatment available through the juvenile court.  The trial court found most factors to be against retaining jurisdiction of the defendants and dismissed the defendants' assertion that the confrontation with Avalos was a street fight.  

"In order to have a street fight, you have to have two people fighting.  There has never been two people fighting in this particular case.  The minor - was pursued down a street.  He was punched in the face.  He was kicked and pummeled to the ground."  

The juvenile court then stated that the defendants 

"beat and kicked another human being into retardation essentially.  They beat this person until he was within an inch of his life.  Not only did they beat him, but they stood there while another person dropped a concrete block on his head.  And then after that occurred, they continued to beat and kick him."  

The juvenile court noted the serious, inhumane, and vicious nature of the crime.  Based on the juvenile court's observations of the two defendants and the testimony presented at the transfer hearing, the juvenile court found that under the "totality of the circumstances, giving extra weight to the seriousness of the offense and giving the appropriate weight to all of the other factors, the motion of the State to prosecute these young men under the criminal laws will be allowed."   

Later, trial court considered the defendants' post-trial motion to be transferred to the juvenile court system for sentencing.  The trial court, relying on 
Brown
, 301 Ill. App. 3d 995, 705 N.E.2d 162, and the Presumptive Transfer Statute (705 ILCS 405/5-805(2)(a) (West Supp. 1999)), determined it had discretion to transfer the juveniles back to the juvenile court for sentencing.  The trial court found the only change between what was presented to the juvenile court when it transferred the case to the criminal court and now was a finding beyond a reasonable doubt that the defendants were guilty of armed robbery, itself a Class X felony.  The trial court stated: 

"recognizing the fact that I do have discretion and recognizing the fact that the [juvenile court] held a hearing and the only difference between what was held at that hearing on that date and today's date is the inclusion of that finding beyond a reasonable doubt of a Class X felony, recognizing my discretion I still find that under the facts as presented before this court that the defendants fall within the jurisdiction of the criminal code and I will sentence them as adults."  

"The legislature has determined that certain minors are not eligible for continuation in the administrative scheme of the juvenile court."  
M.C.
, 319 Ill. App. 3d at 720, citing 
People v. J.S.
, 103 Ill. 2d 395, 402, 469 N.E.2d 1090 (1984).  Further, "[m]inor defendants do not have a constitutional right to be treated as juveniles, and, because the juvenile system is statutory, the legislature has the authority to define the limits of the juvenile system."  
M.C.
, 319 Ill. App. 3d at 320.  The Appellate Court, Second District, has held that where a minor defendant is ultimately convicted of crimes which are not predicate offenses under the Presumptive Transfer Statute, the criminal court has the discretion to consider whether the minor defendant should be transferred back to the juvenile court system (see 
People v. A.T.
, 303 Ill. App. 3d 531, 536-37, 708 N.E.2d 529 (1999)); the facts of this case are distinguishable because here, the defendants were found guilty of a predicate felony, armed robbery (720 ILCS 5/18-2(a) (West 1998)), itself a Class X felony (720 ILCS 5/18-2(b) (West 1998)).  

In this case, the juvenile court found that the defendants were eligible for transfer from the juvenile court to the criminal court based on the predicate felony charge against them and the heinous and vicious nature of their crime.  The defendants were convicted of armed robbery, a Class X felony, beyond a reasonable doubt.  The armed robbery charge could have been used to transfer these defendants, and under the Presumptive Transfer Statute, they would have been eligible for transfer from the juvenile court system into the criminal court system.  705 ILCS 405/5-805(2)(a)(West Supp. 1999); 720 ILCS 5/18-2(a), (b) (West 1998).  We agree with the State that the Presumptive Transfer Statute is unambiguous and mandates a defendant juvenile, convicted of a predicate felony different from the predicate felony which resulted in his transfer to the criminal court system, be sentenced as an adult.  The trial court does not have discretion regarding sentencing so long as the defendant is convicted of a predicate felony under the Presumptive Transfer Statute.  Therefore, we affirm the trial court's decision to sentence the defendants as adults but disagree with its reasoning.   

II. Due Process and Equal Protection

The defendants next argue their constitutional right to due process (U.S. Const., amend. V, XIV) and equal protection (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2) was violated because they were treated more harshly than juveniles transferred to criminal court under other provisions within the Juvenile Court Act; and specifically, under the automatic transfer statute (705 ILCS 405/5-130(2) (West Supp. 1999)) and extended juvenile jurisdiction (705 ILCS 405/5-810 (West 1998)).  The State argues that although the defendants assert the Presumptive Transfer Statute violates both due process and equal protection, the defendants fail to articulate an argument regarding how the Presumptive Transfer Statute violates either substantive or procedural due process.  Regarding the defendants' claim that the presumptive transfer statute violates equal protection, the State maintains that the defendants are not similarly situated to the juveniles transferred into criminal court under other provisions and, therefore, the defendants' equal protection claim must fail.   We first address the defendants' due process claim.  We agree with the State that although the defendants assert in their brief to this court that the Presumptive Transfer Statute violates due process, the defendants fail to articulate an argument regarding how either substantive or procedural due process is violated.  "Bare contentions in the absence of argument or citation of authority do not merit consideration on appeal and are deemed waived."  
Obert v. Saville
, 253 Ill. App. 3d 677, 682, 624 N.E.2d 928 (1993).  Therefore, we find the defendants' argument regarding due process waived.  

We turn now to the merits of the equal protection question raised by the defendants in this appeal.  The analysis applied by this court in assessing alleged equal protection violations is the same under both the federal and state constitutions.  
Lawler v. MacDuff
, 335 Ill. App. 3d 144, 151, 779 N.E.2d 311 (2002).  Equal protection requires equality between individuals who are similarly situated.  
People v. Gorgis
, 337 Ill. App. 3d 960, 975, 787 N.E.2d 329 (2003).  However, the equal protection clause does not require equality or proportionality of penalties for dissimilar conduct.  
Gorgis
, 337 Ill. App. 3d at 975.  "When the law lays an unequal hand on those who have committed intrinsically the same quality of offense and [penalizes] one and not the other ***" (
Skinner v. Oklahoma ex rel Williamson
, 316 U.S. 535, 541, 86 L. Ed. 1655, 1660, 62 S. Ct. 1110, 1113 (1942)), equal protection has been violated.  

"The level of scrutiny applied in reviewing legislative classifications under the equal protection guarantee depends on the nature of the classification: those based on race or national origin, or affecting fundamental rights, receive a heightened level of review under the strict scrutiny standard, whereas economic and social welfare legislation is reviewed under the highly deferential rational basis test."  
In re A.A.
, 181 Ill. 2d 32, 37, 690 N.E.2d 980 (1998).  Although the defendants assert they had a fundamental liberty interest in being tried as juveniles rather than as adults, "[m]inor defendants do not have a constitutional right to be treated as juveniles" (
M.C.
, 319 Ill. App. 3d at 720).  Therefore, we will apply the rational basis test.  See 
People v. R.L.
, 158 Ill. 2d 432, 444, 634 N.E.2d 733 (1994); 
People v. P.H.
, 145 Ill. 2d 209, 229, 582 N.E.2d 700 (1991).  "Under the rational basis test, judicial review of legislative classifications is limited and generally deferential."  
A.A.
, 181 Ill. 2d at 38.  The court simply inquires whether the means employed in the statute to achieve the stated goal are rationally related to that goal.  
A.A.
, 181 Ill. 2d at 38.  If any set of facts can reasonably justify the classification, it must be upheld.  
A.A.
, 181 Ill. 2d at 38.  We review the question of whether there is a rational basis for the classification 
de novo
.  
A.A.
, 181 Ill. 2d at 38.    

Mindful of these principles, we examine the statutory provisions at issue.  The Illinois General Assembly instituted the Presumptive Transfer Statute (705 ILCS 405/5-805(2)(a) (West Supp. 1999)), automatic transfer statute (705 ILCS 405/5-130(2) (West Supp. 1999)), and extended juvenile jurisdiction (705 ILCS 405/5-810 (West 1998)) in juvenile proceedings because there was a disproportionate amount of serious crime committed by a relatively small number of juveniles.  705 ILCS 405/5-801 (West 1998).  The General Assembly specifically stated, "the community's right to be protected shall be the most important purpose of the proceedings."  705 ILCS 405/5-801 (West 1998).     

a. Automatic Transfer Provision 

Regarding the automatic transfer provision (705 ILCS 405/5-130(2) (West Supp. 1999)), juvenile defendants charged under that statute may be sentenced as adults if convicted of 
any
 listed predicate crime (705 ILCS 405/5-130(2)(c)(West Supp. 1999)); however, if a defendant is found guilty of a crime not listed as a predicate felony the State can request a hearing to determine whether the juvenile should be sentenced as an adult.  Therefore, 
if
 any hearing occurs to determine whether a defendant charged under the automatic transfer statute should be sentenced as an adult, it does not occur until 
after
 the defendant has been found guilty of a nonpredicate offense.  

In the case 
sub judice
, a hearing was held in the juvenile court, before the defendants were transferred to criminal court, to determine if the defendants were eligible for transfer.  The juvenile court found the vicious and heinous nature of the defendants' acts required transfer to the criminal court system.  The defendants were convicted of a predicate Class X felony listed as such in the Presumptive Transfer Statute.  Because the defendants in this case were individually evaluated by the juvenile court to determine if they were appropriate for transfer, and were subsequently found guilty of a predicate felony, and keeping in mind "the community's right to be protected" (705 ILCS 405/5-801 West 1998)), we find no equal protection violation.  

b. Extended Juvenile Jurisdiction

Regarding the extended juvenile jurisdiction statute, imposition of that statute is not based on a certain crime committed by a minor defendant but, rather, on the State demonstrating to the juvenile court that transfer is necessary based on the seriousness of the crime and the history of the minor.  705 ILCS 405/5-810(1), (b) (West 2000).  Further, juveniles are subject to extended jurisdiction only after the juvenile court determines it is appropriate.  705 ILCS 405/5-810 (West 1998).  Those charged under the extended jurisdiction statute and Presumptive Transfer Statute are not similarly situated because the Presumptive Transfer Statute covers defendants who commit, not just any felony but, 
inter alia
, Class X felonies, to be transferred to criminal court.  The juvenile court considers whether there is probable cause to believe the facts alleged are true and then transfers the minor 
unless
 it is shown, by clear and convincing evidence, that the minor would be "amenable to the care, treatment, and training programs available through the facilities of the juvenile court."  705 ILCS 405/5-805(2)(b) (West Supp. 1999).  The juvenile court has much more discretion when considering whether to transfer juveniles under extended juvenile jurisdiction; therefore, we do not find the defendants and minors transferred using extended juvenile jurisdiction to be similarly situated.        

In conclusion, the legislature has the authority to punish an offense more severely if there is a rational basis to concluded the offense is a more pervasive threat to society.  
People v. Warwick
, 251 Ill. App. 3d 65, 71, 621 N.E.2d 282 (1993).  The defendants in this case were transferred under the Presumptive Transfer Statute after the juvenile court found the evidence demonstrated probable cause.  The juvenile court also noted the brutal nature of the defendants' acts.  The juveniles were then convicted of a Class X felony, a predicate felony under the Presumptive Transfer Statute, but one the State failed to list when it sought transfer of the defendants to the criminal court system.  We do not find that there is any equal protection violation in this case because the defendants are not similarly situated and the State had a rational basis for constructing various laws regarding transfer of juveniles into the criminal courts system.    

III. Vagueness in the Presumptive Transfer Statute 

The defendants argue that the Presumptive Transfer Statute is unconstitutionally vague because it fails to provide notice to minors regarding sentencing if they are acquitted of the predicate felony for which they were transferred.  The State argues the language making all Class X felonies, other than armed violence, subject to the Presumptive Transfer Statute, removes any doubt and confusion regarding sentencing.  We review this issue 
de novo
.  
People v. Johnson
, 335 Ill. App. 3d 805, 807, 780 N.E.2d 803 (2002).    

A statute violates the due process clause on the basis of vagueness only if its terms are so ill defined that the ultimate decision as to its meaning rests on the opinions of the trier of fact, rather than on objective criteria.  
People ex rel. Sherman v. Cryns
, 203 Ill. 2d 264, 786 N.E.2d 139 (2003).  If a vagueness challenge does not impinge on first amendment rights, "'due process is satisfied if *** the statute's prohibitions are sufficiently definite, when measured by common understanding and practices, to give a person of ordinary intelligence fair warning as to what conduct is prohibited."  
Johnson
, 335 Ill. App. 3d at 807, quoting 
People v. Izzo
, 195 Ill. 2d 109, 113, 745 N.E.2d 548 (2001).  "[A] statute is not unconstitutionally vague merely because one can imagine a hypothetical situations in which the meaning of some terms might be called into question."  
Izzo
, 195 Ill. 2d at 113.  The validity of the statute must be judged according to the particular facts of the case (
Johnson
, 335 Ill. App. 3d at 807); specifically, we must determine whether the Presumptive Transfer Statute is vague as it applies to the particular defendants (
People v. Jihan
, 127 Ill. 2d 379, 385, 537 N.E.2d 751 (1989)).  

The Presumptive Transfer Statute is not unconstitutionally vague as applied to the facts of this case.  The Presumptive Transfer Statute allows the State to charge a minor as an adult and creates a rebuttable presumption that a minor is fit for transfer to the criminal court, if the minor (1) is 15 years of age and older and (2) is charged with a Class X felony other than armed violence.  The defendants were initially transferred based on the charge of attempted first degree murder.  However, the defendants were ultimately convicted of armed robbery (720 ILCS 5/18-2(a) (West 1998)), also a Class X felony (720 ILCS 5/18-2(b) (West 1998)).  The crime of armed robbery is not unconstitutionally vague.  
People v. Reyes
, 212 Ill. App. 3d 149, 152-53, 569 N.E.2d 1368 (1991).  The armed robbery statute clearly delineates that it is a Class X felony and, therefore, subjects the defendants to transfer from the juvenile court system into the criminal court system.  "A principle deeply embedded in our system of jurisprudence is that one's ignorance of the law does not excuse unlawful conduct."  
Izzo
, 195 Ill. 2d at 115.  When initially transferred from the juvenile court, the defendants were unable to counter the rebuttable presumption that they should be transferred to the criminal courts, that is, they were unable to demonstrate by "clear and convincing evidence" that they would benefit from the care, treatment, and training programs offered by the juvenile court system.  

These defendants were transferred based on a Class X felony and convicted of a Class X felony.  Because of the Class X status of their crime, the defendants knew that they would be subject to the sentencing provisions of the Criminal Code.  Accordingly, we find that the Presumptive Transfer Statute is not vague and does not violate the defendants' right to due process.     

IV. 
Apprendi
 Implications

The defendants also argue that the Presumptive Transfer Statute is unconstitutional because it improperly enhances the punishment faced by the defendants and therefore violates 
Apprendi
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348.  The State maintains the defendants' reliance on 
Apprendi
 is misplaced since juvenile transfer proceedings are simply a procedural means of determining the forum in which a minor's guilt will be adjudicated.  Further, the State argues that juvenile transfer proceedings do not assess the guilt of juveniles or impose punishment on them.  

In 
Apprendi
, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  
Apprendi
, 530 U.S. at 490, 147 L. Ed 2d at 455, 120 S. Ct. at 2362-63.  Ultimately, the defendants do not argue their sentences violate 
Apprendi
, only that the process which resulted in their transfer from the juvenile system violates 
Apprendi
. 

A hearing under section 5-805(2) is dispositional, not adjudicatory.  
People v. Beltran
, 327 Ill. App. 3d 685, 690, 765 N.E.2d 1071 (2002); 705 ILCS 405/5-805(2) (West Supp. 1999).  Moreover, a section 5-805(2) hearing does not determine the guilt or innocence of a minor, only the forum in which a minor's guilt may be adjudicated.  
Beltran
, 327 Ill. App. 3d at 690; 705 ILCS 405/5-805(2) (West Supp. 1999).  "It is well established that, in a juvenile proceeding, due process does not require a jury."  
Beltran
, 327 Ill. App. 3d at 690.  We have also found that "[t]he Juvenile Court Act's transfer provision is a procedural mechanism used to determine what division of the circuit court a respondent will be tried in."  
M.C.
, 319 Ill. App. 3d at 719; see 
P.H.
, 145 Ill. 2d at 222 ("Whether a person is tried in juvenile or criminal court is a matter of procedure rather than jurisdiction").      

The presumptive transfer provision of the Juvenile Court Act does not constitute any kind of punishment (
M.C.
, 319 Ill. App. 3d at 719) and the Illinois Supreme Court has stated that 
"Apprendi
 is about sentencing only" (
People v. De La Paz
, 204 Ill. 2d 426, 436, 791 N.E.2d 489 (2003)).  "Thus, although the juvenile court made findings that exposed [a minor defendant] to a greater sanction, [the minor defendant] had no due process right to have a jury make those findings beyond a reasonable doubt."  
Beltran
, 327 Ill. App. 3d at 690-91.  Therefore, we agree with the State that the 
Apprendi
 challenge made by the defendants is misplaced and inapplicable here (
Beltran
, 327 Ill. App. 3d at 691).       

V. Armed Robbery Conviction

As to this final issue, the defendants argue they were not proven guilty of armed robbery beyond a reasonable doubt because the block of concrete used to attack Avalos was not thrown until his sweater and shoes had been removed.  The State argues the evidence demonstrated the defendants were armed with a broken bottle and a large concrete block with which they attacked Avalos while taking his shoes and sweater and, therefore the defendants were proven guilty of armed robbery beyond a reasonable doubt.  

The trial court ruled upon this issue in the defendants' posttrial motion for a new trial.  Specifically, the trial court stated it had reviewed its trial notes and found the testimony from the trial was "conducive to a finding of armed robbery."  To the trial court, the defendants' acts of taking Avalos's sweater and shoes and dropping a concrete block on his head were "contemporaneous."  

The State has the burden of proving the defendants' guilt beyond a reasonable doubt and "[a] reviewing court will not set aside a criminal conviction on grounds of insufficient evidence unless the proof is so improbable or unsatisfactory that there exists a reasonable doubt of the [defendants'] guilt."  
People v. Maggette
, 195 Ill. 2d 336, 353, 747 N.E.2d 339 (2001).  When considering a challenge to the sufficiency of the evidence of the defendants' guilt, it is not a function of the reviewing court to retry the defendants.  
People v. Oaks
, 169 Ill. 2d 409, 457, 662 N.E.2d 1328 (1996).  "[D]eterminations of the credibility of witnesses, the weight to be given to their testimony, and the reasonable inferences to be drawn from the evidence are [the] responsibilities of the trier of fact."  
Oaks
, 169 Ill. 2d at 457.  The relevant question in considering a defendant's challenge to the sufficiency of the evidence is whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
People v. Campbell
, 146 Ill. 2d 363, 374, 586 N.E.2d 1261 (1992).  This standard of review applies in all criminal cases, whether the evidence is direct or circumstantial.  
Maggette
, 195 Ill. 2d at 353.

In order to convict the defendants of armed robbery, the State has to establish beyond a reasonable doubt that the defendants (1) took property from another, (2) by the use or threat of imminent force, (3) while armed with a dangerous weapon.  720 ILCS 5/18-2(a) (West 1998).  

Here there is no dispute that the defendants took Avalos's sweater and shoes.  Therefore, the first element of armed robbery has been met.  

The second element of armed robbery is use of force.  We note that "even if the initial taking is accomplished without force, the offense is [armed] robbery if the departure is accompanied by force."  
People v. Ortiz
, 156 Ill. App. 3d 170, 174, 509 N.E.2d 633 (1987), citing 
People v. Ditto
, 98 Ill. App. 3d 36, 424 N.E.2d 3 (1981).  The record reveals that in the encounter between the defendants and Avalos, the defendants' removal of Avalos's attire from his person was done with force.  There was testimony that a bottle was heard breaking and that Perea's fingerprints were later found on the bottle.  There was testimony that both Perea and Galarza punched Avalos.  There was also testimony that Galarza kicked Avalos.  These acts disabled Avalos so that the defendants were able to take from him what they wanted.  Under these circumstances, we agree with the State that force used against Avalos was necessary to complete the robbery.        

The third and final element of an armed robbery is the presence of a deadly weapon.  The nature of a weapon and its potential for doing harm are questions of fact for the trier of fact.  See 
People v. Olmos
, 67 Ill. App. 3d 281, 290, 384 N.E.2d 353 (1978).  In this case, the trial court found that the cement block was used like a club because it was used to knock Avalos's head open and completly incapacitate him; therefore, it constitutes a dangerous weapon.  See 
Ditto
, 98 Ill. App. 3d at 39 (where screwdriver used as a knife constituted a deadly weapon).  We distinguish these facts from 
People v. Simmons
, 34 Ill. App. 3d 970, 342 N.E.2d 322 (1975), where the court found that the defendant did not use his gun to obtain stolen property but instead to commit a subsequent battery.  Unlike in 
Simmons
, witnesses here testified Avalos was down and that they saw one of the defendants throw a concrete block on his head.  The defendants succeeded in totally incapacitating Avalos to ensure their escape.  "The use of a dangerous weapon at any point of a robbery, so long as it can reasonably be said to be part of a single occurrence or incident, will constitute armed robbery."  
Olmos
, 67 Ill. App. 3d at 290.  We agree with the State that the evidence established that the defendants, working together, committed one continuous act by beating up the victim, taking his sweater and shoes, dropping a concrete block on his head, kicking him, and then escaping into the night.  The offense of armed robbery was therefore complete.

We also note there is no legal inconsistency in the trial court's finding Perea and Galarza guilty of armed robbery (720 ILCS 5/18-2(a) (West 1998)) and aggravated battery (720 ILCS 5/12-4(b)(1), (b)(8) (West 1998)), but not guilty of attempted first degree murder (720 ILCS 5/8-4, 9-1 (West 1998)) or armed violence (720 ILCS 5/33A-2 (West 1998)).  Although neither Perea nor Galarza threw the concrete block on Avalos's head, "if the proof shows that a person was present at the commission of the crime without disapproving or opposing it, it is competent for the trier of fact to consider this conduct in connection with other circumstances and thereby reach a conclusion that such person assented to the commission of the crime, lent to it his countenance and approval and was thereby aiding and abetting the crime."  
People v. Washington
, 26 Ill. 2d 207, 209, 186 N.E.2d 259 (1962).  The Illinois Supreme Court's holding that criminal "defendants in Illinois can no longer challenge convictions on the sole basis that they are legally inconsistent with acquittals on other charges" (
People v. Jones
, 207 Ill. 2d 122, 133-34, 797 N.E.2d 640 (2003)), is applicable to both bench and jury trials (
People v. McCoy
, 207 Ill. 2d 352, 356, 799 N.E.2d 269 (2003)).  The Illinois Supreme Court has also rejected the contention that inconsistent verdicts are unreliable or suggest confusion or misunderstanding on the part of the jury (
McCoy
, 207 Ill. 2d at 357), and instead have found that inconsistent verdicts can often be explained as a product of juror or judicial lenity (
Jones
, 207 Ill. 2d at 132-33, citing 
United States v. Powell
, 469 U.S. 57, 83 L. Ed. 2d 461, 105 S. Ct. 471, 1984)).  We presume that a judge sitting as the trier of fact in a bench trial knows the law (
McCoy
, 207 Ill. 2d at 357) and may choose to exercise lenity in what it perceives as the interest of justice (
McCoy
, 207 Ill. 2d at 358).     

In this case, the evidence demonstrated Perea, Galarza, and Jimenez came up with a common design to do an unlawful act; therefore, "the act of one is the act of all."  
Olmos
, 67 Ill. App. 3d at 291.  Looking at the evidence presented in the light most favorable to the State, there was more than enough evidence to find the defendants guilty of armed robbery (720 ILCS 5/18-2(a) (West 1998)) beyond a reasonable doubt.  Therefore, we affirm the trial court's finding on this point.          

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court. 

Affirmed. 
    

WOLFSON, P.J., and CAHILL, J., concur.